Elaine AIKINS, California Association
of the Deaf, Plaintiffs,

v.

ST. HELENA HOSPITAL, James
Lies, M.D., Defendants.

No. C 93–3933 FMS.

United States District Court,
N.D. California.

Feb. 2, 1994.

Suzanne H. Rosen, California Center For Law And The Deaf, Oakland, CA, for plaintiffs.

John L. Supple, La Follette Johnson De-Haas Fesler & Ames, San Francisco, CA, Stephen J. Liberatore, Dunn Rogaski Preovolos & Weber, Vallejo, CA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

### INTRODUCTION

Plaintiffs Elaine Aikins ("Mrs. Aikins") and California Association of the Deaf ("CAD") have brought suit against defendants St. Helena Hospital ("St. Helena," "the hospital") and Dr. James Lies ("Dr. Lies") under the Americans with Disabilities Act ("the ADA"), the Rehabilitation Act of 1973, and various California civil rights statutes. Both defendants have filed motions to dismiss or, in the alternative, for summary judgment. Defendants have also sought to have CAD dismissed from the lawsuit on the basis that CAD lacks standing.

### BACKGROUND

The events giving rise to this lawsuit occurred between October 30 and November 4, 1992. Mrs. Aikins is a deaf woman whose husband, Harvey Aikins, suffered a massive cardiac arrest at approximately 8:00 p.m. on October 30, 1992. Following Mr. Aikins's attack, Mrs. Aikins went to the home of some neighbors and had them call 911. According to Mrs. Aikins, the paramedics arrived at her home approximately four minutes after the call to 911, which defendants assert was approximately fifteen minutes after Mr. Aikins suffered the attack.[1] The paramedics then transported Mr. Aikins to St. Helena Hospital.

Dr. Lies was working in St. Helena's emergency room when Mr. Aikins was brought in.

---

1. There is some conflict among the parties as to the timing of these events. Mrs. Aikins maintains that the paramedics arrived four minutes after the call and worked on Mr. Aikins for another fifteen minutes. Defendants initially thought that the paramedics arrived four minutes after the attack but assert that they later learned that they had not arrived until fifteen minutes after the attack. As Mrs. Aikins's claims relate not to the propriety of her husband's treatment but rather to the hospital's and Dr. Lies's ineffective communication with her, the difference in these time estimates is relevant only to the issue of the effectiveness of the communication between Mrs. Aikins and hospital officials.

Dr. Lies is an independent contractor on staff at the hospital. He exercises no authority over hospital policy. When the paramedics informed Dr. Lies that they had arrived within four minutes of Mr. Aikins's attack, Dr. Lies decided to perform an emergency angioplasty. He attempted to consult Mrs. Aikins and to obtain her consent, but Mrs. Aikins could not understand him and requested that interpreters be provided. A hospital operator with some knowledge of fingerspelling was summoned and attempted to fingerspell Dr. Lies's comments for Mrs. Aikins. The woman became frustrated, however, and gave up her efforts within a minute. Shortly thereafter, Mrs. Aikins's neighbors arrived and attempted to mediate between Dr. Lies and Mrs. Aikins. Dr. Lies asserts that the neighbors "were quite able to communicate with [Mrs. Aikins]" and relayed to her his opinion that, with immediate medical intervention, Dr. Lies might be able to save Mr. Aikins's life. Mrs. Aikins submits that the neighbors only passed her a terse note stating that Mr. Aikins may have had a massive cardiac arrest and that he was "brain dead."

Subsequently, Mrs. Aikins went to the hospital's administrative office and made further attempts to secure interpreter services. At approximately 9:00 p.m., she was approached by a member of the hospital staff who sought to obtain her signature on forms consenting to the emergency procedure. Although the forms say that "[y]our signature on this form indicates ... (2) that the operation procedure set forth above has been adequately explained to you by your physician, (3) that you have had a chance to ask questions, [and] (4) that you have received all of the information you desire concerning the operation or procedure ...," Mrs. Aikins claims that she was told only that "Dr. Lies needed [her] signature to permit him to perform surgery to save [her] husband's life." Dr. Lies claims that, although he believed that it was unnecessary under the circumstances to obtain Mrs. Aikins's consent to the surgery, "given [her] disability, [he] wanted her to be involved."

Later that evening, Dr. Lies contacted Mrs. Aikins's daughter, Francine Stern, to request that she fly up to Calistoga from Los Angeles to help her mother. Ms. Stern, who was Mr. Aikins's stepdaughter, is a fluent signer. Ms. Stern told Dr. Lies that she would be unable to come up until November 2nd.

Mrs. Aikins went to her husband's room at approximately 12:30 on the night of the operation. She claims that the nurse on duty told her that Mr. Aikins would not survive without life support and that Mrs. Aikins then requested that life support be discontinued. She then went to the administrative office, accompanied by a deaf friend, to request interpreter services again. Both the office and another nurse whom Mrs. Aikins and her friend later encountered in Mr. Aikins's room allegedly told Mrs. Aikins that the hospital had no means of procuring interpreter services.

The following day, October 31, 1992, Mr. Aikins showed no neurologic improvement, prompting Dr. Lies to question Mrs. Aikins about the length of time between the heart attack and the arrival of the paramedics. Dr. Lies submits that it was during this questioning, seemingly conducted through Mrs. Aikins's in-laws, that he first learned that fifteen minutes, not four, had elapsed between Mr. Aikins's heart attack and the commencement of CPR. Based on this new information, Dr. Lies ordered an EEG. The EEG was performed on November 1, 1992, at 9:00 a.m. and revealed that Mr. Aikins had no brain activity.

On November 2nd, Mrs. Aikins's daughter arrived and participated in a meeting with Dr. Lies and Mrs. Aikins. Mrs. Aikins claims that this meeting was the first opportunity that she had to communicate directly with Dr. Lies and to receive complete answers to her questions. As a result of the meeting, Mrs. Aikins requested that her husband's life support be discontinued. Mr. Aikins died two days later.

Defendants have each filed motions to dismiss or, in the alternative, for summary judgment. Dr. Lies argues that he is not covered by the ADA; that the Rehabilitation Act is inapplicable; and that plaintiffs cannot recover against him on their state law causes of action. St. Helena argues that it complied

with both the ADA and the Rehabilitation Act as a matter of law. Both defendants also submit that CAD is not a proper party to the action and that monetary relief is unavailable under the federal statutes.

## DISCUSSION

### I. Plaintiffs' Standing to Seek Injunctive Relief

■■■ Defendants have challenged CAD's standing to participate in this lawsuit.[2] Although defendants concede Mrs. Aikins's standing, the Court has an independent obligation to consider this issue also, as it goes to the Court's jurisdiction. *See Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Greater Los Angeles Council on Deafness v. Baldrige,* 827 F.2d 1353, 1358 (9th Cir.1987). Plaintiffs have the burden of establishing that they have standing to raise the claims asserted.[3] *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2136.

The Supreme Court has developed a three-part test for standing, a constitutional prerequisite growing out of Article III's "case or controversy" requirement. *See* U.S. Const. art. III, § 2, cl. 1. The first prong of the test is the "injury in fact" requirement: "[T]he plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'' " *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2136. The second and third elements of the test are causation and redressability. *Id.* As it is clear that defendants caused whatever violation of the relevant statutes may have occurred, and that a favorable decision of this Court would redress any injuries caused by violation of the statutes, only the first aspect of the inquiry is at issue here.

*City of Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983), established that a plaintiff seeking injunctive relief premised upon an alleged past wrong must demonstrate a "real and immediate threat" of repeated future harm to satisfy the injury in fact prong of the standing test. This requirement is independent of the substantive requirements for equitable relief. *Id.* at 111, 103 S.Ct. at 1670. In *Lyons,* the plaintiff was a black resident of Los Angeles who alleged that he had been subjected to a "chokehold" without provocation or justification during a routine traffic stop. Plaintiff brought suit against the officers involved in the incident and the city of Los Angeles, seeking both damages and injunctive relief. The Supreme Court held that plaintiff had no standing to pursue a claim for injunctive relief because he could not show that he was "realistically threatened by a repetition of his experience...." *Id.* at 109, 103 S.Ct. at 1669. To make this showing, plaintiff "would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such a manner." *Id.* at 105–06, 103 S.Ct. at 1667.

■■ Mrs. Aikins has not shown her standing to seek injunctive relief under *Lyons.* In her complaint, Mrs. Aikins alleges only that she is a deaf individual and within the protection of the ADA, the Rehabilitation Act, and various state statutes. Compl. ¶ 4. Mrs. Aikins further states that she owns a mobile home seven miles from St. Helena Hospital and that she stays at the home for several days each year. Aikins Decl. ¶ 2. These allegations do not establish the "real and immediate threat" of future harm that *Lyons* requires. Mrs. Aikins has shown neither

---

**2.** CAD clearly has no standing to pursue a damages remedy in this case; therefore, the Court considers only its standing to seek injunctive relief.

**3.** As the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element

must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Defenders of Wildlife,* —— U.S. at ——, 112 S.Ct. at 2136.

that she is likely to use the hospital in the near future, nor that defendants are likely to discriminate against her when she does use the hospital. The Court cannot infer from Mrs. Aikins's limited experience with Dr. Lies and St. Helena Hospital that defendants routinely fail to comply with applicable anti-discrimination statutes.

Plaintiffs rely on *Council on Deafness*, 827 F.2d at 1353, to establish their standing for injunctive relief. In that case, plaintiffs were GLAD, a nonprofit organization dedicated to furthering the interests of deaf and hearing-impaired individuals, an attorney for GLAD who had filed an administrative complaint with the Department of Commerce, and two deaf individuals acting on their own behalf and as representatives of a class of similarly situated persons. Plaintiffs sought a writ of mandamus against the Department of Commerce, alleging that the department had failed to act on an administrative complaint that charged a public television station with violation of the Rehabilitation Act for failure to provide closed-captioned hearing. Plaintiffs alleged that the department's failure to act on the complaint was itself a violation of the Act. In holding that plaintiffs had standing to pursue their claim for injunctive relief, the Ninth Circuit noted that "[t]he actual or threatened injury required by Article III may exist solely by virtue of a statute that creates legal rights, the invasion of which creates standing." 827 F.2d at 1358. The court found that the Rehabilitation Act was such a statute.

*Council on Deafness* is distinguishable from this case. Implicitly at issue in that case was whether defendant's alleged violation of the Rehabilitation Act was an "injury in fact" sufficient to confer standing on plaintiffs. If the claimed violation constituted an injury, there was no question as to the imminence of the harm occasioned by the injury. Plaintiffs had filed an administrative complaint, on which defendant had failed to act; thus, the claimed injury was ongoing. Here, by contrast, imminence has not been shown. Although an alleged violation of the ADA and the Rehabilitation Act is an injury sufficient to give rise to an Article III case or controversy, Mrs. Aikins has not shown that defen-dants' alleged discrimination is ongoing and that she is likely to be served by defendants in the near future. Mrs. Aikins's claims for injunctive relief are accordingly dismissed with leave to amend to show that Mrs. Aikins faces a real and immediate threat of future injury at the hands of defendants.

CAD's standing to seek injunctive relief suffers from the same defects. An association seeking to bring suit on behalf of its members must show: (1) that its members would have standing to sue in their own right; (2) that the interests that it seeks to protect are germane to the organization's purpose; and (3) that neither the claim asserted nor the relief requested require the participation of individual members. *Council on Deafness*, 827 F.2d at 1358. CAD has alleged only that it is a nonprofit organization with at least eight hundred members, organized for the purpose of serving the needs of deaf individuals "through advocacy, education and referral," and that some members of CAD "have been or likely will be served by defendants...." Compl. ¶ 5. Although these allegations are sufficient to satisfy the second and third requirements for associational standing, *Council on Deafness*, 827 F.2d at 1358, they fail to show that CAD's members would have standing to sue in their own right. CAD's claims are accordingly dismissed with leave to amend to show standing to seek injunctive relief only.

## II. Plaintiffs' Claims under the Americans with Disabilities Act

Plaintiffs claim that defendants violated the Americans with Disabilities Act ("ADA") by denying Mrs. Aikins access to information in connection with the treatment of her husband. The ADA provides, in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (West Supp.1993).

### A. The ADA Does Not Apply to Dr. Lies

██ Dr. Lies contends that plaintiffs' claims against him under the ADA must fail because the Act does not apply to him in his capacity as an independent contractor with St. Helena. The regulations implementing the ADA alter the language of the statute slightly to read as follows: "No individual shall be discriminated against on the basis of disability ... by any private entity who owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. § 36.201(a) (1993). The preamble to the regulation notes that the change was designed to make clear that the regulation "places the ADA's nondiscrimination obligations on 'public accommodations' rather than on 'persons' or 'places of public accommodation.'" 36 C.F.R. App. B § 36.104 (1993).

The statute and the regulation both indicate that individuals may be liable under the ADA if they "own, lease[ ] (or lease[ ] to), or operate[ ]" a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 35.201(a) (1993). The use of language relating to ownership or operation implies a requirement of control over the place providing services. Dr. Lies, however, is an independent contractor with St. Helena. Lies Decl. ¶ 3. He is not on the hospital's board of directors, and he has no authority to enact or amend hospital policy. *Id.* Because he lacks the power to control hospital policy on the use of interpreters, this Court holds that Dr. Lies is not a proper defendant under the ADA.

Plaintiffs contend that this construction of the ADA undercuts the Act's purpose. Noting that the Act defines "public accommodation" to include the "professional office of a health care provider," 42 U.S.C. § 12181(7)(F) (West Supp.1993), plaintiffs maintain that the Act would clearly cover Dr. Lies had he provided services to Mr. and Mrs. Aikins at his own office. They argue that he should not be able to escape liability under the ADA merely because in this case he provided services outside his office. "To hold otherwise," plaintiffs suggest, "would allow individuals to discriminate whenever they provide part of their services outside of their place of public accommodation while disallowing the very same type of discrimination for those services provided at the place of public accommodation."

Plaintiffs' policy argument does not warrant a departure from the statute's implicit requirement of ownership or control. The Court's construction of the Act is not at odds with the ADA's fundamental purpose of eliminating discrimination against individuals with disabilities, *see* 42 U.S.C. § 12101(b)(1) (West Supp.1993), because it retains accountability for those in a position to ensure non-discrimination.

### B. St. Helena Has Not Shown That It Complied with the Act as a Matter of Law

St. Helena does not dispute that the ADA applies to it, *see* 42 U.S.C. § 12181(7)(F), but claims that it complied with the Act as a matter of law. Alternatively, St. Helena argues that compliance is excused, as it would impose an undue burden on the hospital. The regulations implementing the ADA provide that a "public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c) (1993). This requirement is tempered by the general qualification that a public accommodation may treat disabled individuals in need of auxiliary aids and services differently from other individuals if "the public accommodation can demonstrate that [ensuring equality of treatment] would ... result in an undue burden, i.e. significant difficulty or expense." § 36.303(a) (1993).

St. Helena bases its contention that it complied with the ADA as a matter of law on the following evidence and allegations: that its human resources department had in place a policy of providing interpreters to those in need of them; that the hospital posted signs notifying the public that information about T.D.D. services could be obtained by going to the switchboard; that the switchboard operator and the office of human resources maintained lists of interpreters; that Mr. Aikins's medical records contain a statement that "there were interpreters present at all times during the discussion with the patient and the family"; and that "the complaint is replete with descriptions of instances where

information was exchanged between plaintiff Aikins and members of the St. Helena hospital staff." Defendant argues alternatively that provision of an interpreters on a twenty-four hour a day basis would impose an undue burden on the hospital.

■ The record does not reveal that St. Helena complied with the ADA as a matter of law. St. Helena has not demonstrated that it communicated effectively with plaintiff Aikins during her husband's stay in the hospital. Indeed, the hospital's allegations that communication was effective are undercut not only by plaintiff's own account of the episode but also by the fact that, for between twenty-four to thirty-six hours, Dr. Lies was under the concededly mistaken impression that Mr. Aikins had been without CPR for only four minutes following his heart attack, a critical fact. *See* Lies Decl. ¶¶ 4, 9. Furthermore, although the regulations provide that the hospital "shall furnish" appropriate auxiliary aids and services for non-hearing individuals, § 36.303(c), it appears that St. Helena relied almost exclusively on Mrs. Aikins to provide her own interpreters. There exists a genuine dispute as to the issue of St. Helena's compliance with the ADA.

■ Finally, the Court cannot say as a matter of law that provision of interpreters would have imposed an undue burden on the hospital. The regulations set out criteria for determining whether a proposed accommodation imposes an undue burden within the meaning of section 36.303(a). Section 36.104 provides, in pertinent part:

> In determining whether an action would result in an undue burden, factors to be considered include—(1) The nature and cost of the action needed under this part; (2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation ...; or the impact otherwise of the action upon the operation of the site; (3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question

> to any parent corporation or entity; (4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and (5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

§ 36.104 (1993). The question whether provision of interpreter services on some basis would pose an undue burden on St. Helena raises material issues of fact.[4]

*Dobard v. San Francisco Bay Area Rapid Transit District,* 1993 WL 372256 (N.D.Cal. Sept. 7, 1993), cited by defendant, does not warrant a different conclusion. In that case defendant transit authority provided plaintiff with both a sign language interpreter and a sound amplification device in connection with his attendance at a public board meeting. Plaintiff argued that defendant nonetheless violated the ADA by refusing to provide plaintiff with a computer aided transcription device, the auxiliary aid of his choice. The court in *Dobard* found that plaintiff had failed to state a claim for violation of the ADA, as defendant was not required to employ the most advanced technology but only to ensure that communication was effective. Plaintiffs herein are not arguing for an absolute right to a particular auxiliary aid. Rather, they claim a right to effective communication with the hospital. St. Helena, unlike the defendant in *Dobard,* allegedly made no effort to provide Mrs. Aikins with auxiliary aids, relying upon Mrs. Aikins to marshal her own communication resources.

## III. Plaintiffs' Claims under the Rehabilitation Act

### A. Mrs. Aikins Is an "Otherwise Qualified" Individual Within the Meaning of the Act

■ Plaintiffs have raised claims under section 504 of the Rehabilitation Act of 1973. Section 504 provides, in pertinent part: "No

---

**4.** As discussed in Section IV, however, the Court

must dismiss plaintiffs' claims under the ADA.

otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." [5] 29 U.S.C. § 794(a) (West Supp.1993). Section 794a provides a private right of action for violations of section 794. *See* 29 U.S.C. § 794a(b) (West 1985); *Smith v. Barton*, 914 F.2d 1330, 1337–38 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991). Defendant Lies argues that plaintiffs' claims under section 504 should be dismissed because plaintiff Aikins is not an "otherwise qualified" individual within the meaning of the Act.

In *Rothschild v. Grottenthaler,* 907 F.2d 286 (2d Cir.1990), the Second Circuit addressed a similar issue. The plaintiffs in *Rothschild* were deaf parents of hearing students who claimed that their school district was violating the Rehabilitation Act by refusing to provide interpreters for plaintiffs at meetings to which the school invited parents. Defendants argued that plaintiffs were not "otherwise qualified" to take advantage of the school district's primary service, education.

The *Rothschild* court found that defendants had "seriously misapprehend[ed] the import of section 504." Observing that the regulations interpreting section 504 define "qualified handicapped person" [6] broadly to include "a handicapped person who meets the essential eligibility requirements for the receipt of such services," *see* 34 C.F.R. § 104.-3(k) (1993), the Second Circuit concluded that the Act applies to all services offered by a covered entity, not just those relating to the entity's central function. "The fact that a particular recipient institution is primarily engaged in the provision of one category of service does not exempt it from Regulation 104.3(k) in its provision of other services." 907 F.2d at 291.

Although *Rothschild* is not binding upon this Court, its reasoning is sound. That Mrs. Aikins was not a patient at St. Helena should not preclude her from raising claims under the Rehabilitation Act based on the hospital's failure to communicate effectively with her in connection with its treatment of her husband. Mrs. Aikins was "otherwise qualified" to discuss her husband's condition with hospital officials, including Dr. Lies.

Defendant Lies next argues that California law precludes Mrs. Aikins from being "otherwise qualified" in the circumstances presented by this case. He submits that Mrs. Aikins's consent to the procedures performed on her husband was not necessary; as a consequence she was not required to be consulted or kept informed of her husband's condition. Defendant attempts to analogize from *Bowen v. American Hospital Association,* 476 U.S. 610, 630, 106 S.Ct. 2101, 2114, 90 L.Ed.2d 584 (1986), wherein a plurality of the Court stated that a "hospital's withholding of treatment when no parental consent has been given cannot violate § 504." The plurality reasoned that, in the absence of the required parental consent, the infant is neither "otherwise qualified" within the meaning of the Act, nor denied treatment "solely because of his handicap." Defendant maintains that Mrs. Aikins is not "otherwise qualified" because her consent to her husband's treatment was not required.

Defendant's argument is unavailing. Dr. Lies's argument that emergency circumstances vitiated the requirement of informed consent is undercut by his own statement that, "[t]hough it was clear to me that Mr. Aikins presented an immediate medical emergency, thus making informed consent unnecessary, I had time to, and so did seek to, advise Mrs. Aikins and obtain her consent." Lies Decl. ¶ 6. Having undertaken to obtain Mrs. Aikins's consent, defendant was obligated to do so in a nondiscriminatory manner. *See Rothschild,* 907 F.2d 286; 34

---

5. Plaintiffs have alleged that, because Dr. Lies is a "program or activity" receiving federal financial assistance, he is within the Act's coverage. Dr. Lies apparently concedes this point, based upon his receipt of Medicare and Medicaid reimbursements.

6. The regulations continue to use the expression "handicap," although the statute has been amended to use the term "disability."

C.F.R. § 104.4(b)(1) (1993) ("A recipient, in providing any ... service, may not ... on the basis of handicap ... [a]fford a qualified handicapped person an opportunity to participate in or benefit from the ... service that is not equal to that provided others...."). More important, Mrs. Aikins's claims relating to inadequate communication span a period of almost seventy-two hours, from the time of her husband's admission to the hospital until the time that his life support was disconnected. Whatever emergency existed at the time of Mr. Aikins's admission to the hospital had subsided by the time the decision was made to discontinue his life support. *See, e.g.,* Cal.Bus. & Prof.Code § 2397(c)(3) (West 1990). Finally, *Bowen* is distinguishable. That case essentially involved a failure of causation. It was the parents' refusal of consent, not the infant's disability, that would have resulted in the denial of treatment.[7] By contrast, it was precisely Mrs. Aikins's disability that caused defendants to communicate with her in an allegedly inadequate manner.

**B. Defendants Have Not Shown That They Complied with the Act as a Matter of Law**

■ Defendants finally argue that they complied with the Rehabilitation Act as a matter of law. Defendant Lies argues that Mr. Aikins received precisely the same treatment that he would have received had Mrs. Aikins not been deaf. Defendant St. Helena maintains that it provided all that it was required to provide under the Act.

Both arguments are without merit. Even if Mr. Aikins received exactly the care that he would have received had Mrs. Aikins not been deaf, Dr. Lies misses the point. Mrs. Aikins's claims relate to her exclusion from meaningful participation in the decisions affecting her husband's treatment, not to the appropriateness of the treatment itself. *See* § 794(a); *Rothschild,* 907 F.2d 286. As to the hospital's argument, the Court cannot infer from defendant's reference to its policies on interpreters and its own self-serving statements that it communicated effectively with plaintiff at all times that it complied with the Rehabilitation Act as a matter of law.

**IV. Availability of Damages under the Federal Statutes**

■ Defendants argue that Mrs. Aikins is not entitled to compensatory relief under either the ADA or the Rehabilitation Act. They are correct about the ADA. In cases involving claims under subchapter three of the ADA, the Act provides only for injunctive relief. Section 12188(a)(1) states that the remedies available to persons subjected to discrimination in violation of that subchapter are those set forth in 42 U.S.C. section 2000a–3(a). 42 U.S.C. § 12188(a)(1) (West Supp.1993). Section 2000a–3(a) provides: "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a–2 of this title, a civil action for preventive relief ... may be instituted by the person aggrieved...." 42 U.S.C. § 2000a–3(a) (West 1981). In *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401–02, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), the Supreme Court held that a plaintiff suing under section 2000a–3(a) cannot recover damages. Plaintiffs appear to concede the unavailability of compensatory relief under the ADA in their opposition papers. *See* Opposition 6:15–16 ("Plaintiff Aikins bases her federal claim for compensatory relief on Section 504.").

Because plaintiffs lack standing on the present record to assert claims for injunctive relief, the unavailability of damages under the ADA requires dismissal of all claims under the ADA. Such dismissal is without prejudice to plaintiffs' reinstating the ADA claims for injunctive relief upon a proper showing of standing.

■ As to Mrs. Aikins's claims under the Rehabilitation Act, the Ninth Circuit has held that damages are available for violations of the Act. Section 794a provides, in pertinent part: "The remedies, procedures, and

---

7. *Bowen* involved a challenge to federal regulations governing the treatment of disabled infants, not an actual instance of allegedly discriminatory treatment.

rights set forth in title VI of the Civil Rights Act of 1964 [codified at 42 U.S.C. section 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance ... under section 794 of this title." 29 U.S.C. § 794a(a)(2) (West 1985). Exhaustion of administrative remedies is not a prerequisite to suit in the Ninth Circuit. *Greater Los Angeles Council on Deafness, Inc. v. Community Television of Southern California,* 719 F.2d 1017, 1021 (9th Cir.1983), *cert. denied sub nom. Gottfried v. U.S.,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984). The settled interpretation of section 794a in the Ninth Circuit is that money damages are available for violations of section 504 of the Rehabilitation Act, codified as section 794 of Title 29 of the United States Code. *See, e.g., Smith v. Barton,* 914 F.2d 1330, 1337–38 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991). Defendants' arguments that the Ninth Circuit has misconstrued the Act are made to the wrong court.

## V. Plaintiffs' State Law Claims

Dr. Lies moves to dismiss or, in the alternative, for summary judgment on plaintiffs' state law claims.[8] Plaintiffs have asserted claims under Civil Code sections 51 and 54.1; Government Code section 11135, and Health and Safety Code section 1259. *See* Cal.Civ. Code §§ 51, 54.1 (West Supp.1994); Gov't.Code § 11135 (West Supp.1994); Health & Safety Code § 1259 (West Supp. 1994). Dr. Lies argues that the state statutes do not apply to him in his capacity as a staff doctor at St. Helena; that he complied with the statutes as a matter of law; and that Mrs. Aikins cannot recover damages under those statutes.

### A. Civil Code Section 51

The Unruh Civil Rights Act, codified at Civil Code section 51, provides, in pertinent part:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever ... A violation of the right of any individual under the Americans with Disabilities Act of 1990 ... shall also constitute a violation of this section.

Cal.Civ.Code § 51 (West Supp.1994). Civil Code section 52 provides a damage remedy for violations of section 51: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51 ... is liable for each and every offense for the actual damages, and any amount that may be determined by a jury ... up to a maximum of three times the amount of actual damages but in no case less than two hundred fifty dollars ... and any attorney's fees...." Civ.Code § 52(a) (West Supp. 1994). Section 52(h) provides, in accordance with existing law, that "actual damages" means special and general damages. Civ. Code § 52(h) (West Supp.1994).

 Dr. Lies argues that section 51 does not give rise to any cause of action against him in his capacity as an independent contractor at St. Helena Hospital. He provides no authority for this proposition, and the Court is aware of none. Accordingly, and in keeping with California's general policy of construing the Unruh Act liberally, *see, e.g., Crowell v. Isaacs,* 235 Cal.App.2d 755, 45 Cal.Rptr. 566 (1965), the Court denies Dr. Lies's motion to dismiss Mrs. Aikins's claim for damages under section 51. Furthermore, Dr. Lies has not shown that he complied with section 51 as a matter of law.[9]

 Dr. Lies also maintains that plaintiff cannot recover damages under the Unruh Act for his alleged violation of section 51 because she has not sustained any "monetary loss" by reason of the alleged violation. Section 52(h) provides, however, that plaintiffs

---

**8.** St. Helena has not challenged the propriety of plaintiffs' state law claims but has merely requested that the Court decline to exercise supplemental jurisdiction over those claims if the Court dismisses plaintiffs' federal law claims.

**9.** *See* discussion *supra* section II.B.

proving a violation of section 51 can recover both general and special damages. Civ.Code § 52(h). Plaintiff is not required to prove a specific monetary loss in order to state a claim for damages under section 52.

## B. Civil Code Section 54.1

Civil Code section 54.1 provides, in pertinent part: "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of all ... places of public accommodation ... and other places to which the general public is invited...." Civ.Code § 54.1(a) (West Supp.1994). Section 54.3 provides that "[a]ny person or persons, firm or corporation who ... interferes with the rights of an individual with a disability under section[] ... 54.1 ... is liable for each offense for the actual damages and any amount as may be determined by a jury ... up to a maximum of three times the amount of actual damages but in no case less than two hundred fifty dollars ... and [any] attorney's fees...." Civ.Code § 54.3 (West Supp.1994).

■ In seeking to dismiss plaintiff's claims under section 54.1, Dr. Lies invokes the same arguments that he makes in connection with plaintiff's claims under section 51. He also maintains that he is not a "place of public accommodation" under section 54.1 but provides no case support for his interpretation of that section. The Court declines to dismiss plaintiff's claims under section 54.1 absent a stronger showing of inapplicability on the part of Dr. Lies. Liability under section 54.3 extends not only to those who violate section 54.1 but also to those who "interfere[] with the rights of an individual with a disability" under section 54.1. The Court cannot say as a matter of law that Dr. Lies did not interfere with Mrs. Aikins's rights under section 54.1 by failing to provide her with an interpreter or to take other affirmative steps to ensure proper communication with her.

## C. Government Code Section 11135

Government Code section 11135 provides, in pertinent part:

No person in the State of California shall, on the basis of ... disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state ... With respect to discrimination on the basis of disability, programs and activities subject to [this section] shall meet the protections and prohibitions contained in ... the Americans with Disabilities Act of 1990 ... and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to [this section] shall be subject to the stronger protections and prohibitions....

Gov't.Code. § 11135(a), (b) (West Supp.1994). Plaintiffs are not seeking damages under section 11135, but only injunctive relief. *See* Plaintiffs' Opposition Memorandum 7:21–24.

■ Dr. Lies argues that he is not a "program or activity" covered by this section within the meaning of the statute or the regulations promulgated thereunder. He also claims that he complied with the section as a matter of law, as "Mr. Aikins' treatment was not altered in any way due to Mrs. Aikins' disability." Dr. Lies's arguments as to his compliance with section 11135 fail for the same reasons that his arguments against plaintiffs' Rehabilitation Act claims failed.[10]

The section's coverage of Dr. Lies in his capacity as an independent contractor at St. Helena depends upon whether he qualifies as a "recipient[] of State support." The regulations implementing section 11135 define "program or activity" in the following manner:

[A]ny project, action or procedure undertaken directly by recipients of State support or indirectly by recipients through others by contracts, arrangements or agreements, with respect to the public generally or with respect to any private or public entity. Such programs or activities include, but are not limited to ... the provision of ... health ... services....

10. *See* discussion *supra* section II.B.

Cal.Code Regs. tit. 22, § 98010 (1993). The section defines "recipient" to include

> any contractor ... or person, who regularly employs five or more persons and who receives State support, as defined in this Section, in an amount in excess of $10,000 in the aggregate per State fiscal year or in an amount in excess of $1,000 per transaction, by grant, contract, or otherwise, directly or through another recipient, ... excluding the ultimate beneficiary of State support....

*Id.* Plaintiffs have not alleged that Dr. Lies regularly employs at least five persons or that he receives the requisite amount of qualifying financial assistance from the state; thus, their allegations are insufficient to establish that Dr. Lies is a program or activity as defined in the regulations.

Plaintiffs' claims under section 11135 are also deficient in other respects. Section 98003 of the regulations appears to require exhaustion of administrative remedies as a prerequisite to suit for violation of Code section 11135. Plaintiffs have made no showing of exhaustion. They have also failed to provide the authority for a private right of action to enforce section 11135. The Court accordingly dismisses plaintiffs' claims under section 11135.

#### D. Health and Safety Code Section 1259

■ Health and Safety Code section 1259 provides, in pertinent part:

> [I]t is the intent of the Legislature that where language or communication barriers exist between patients and the staff of any general acute care hospital, arrangements shall be made for interpreters or bilingual professional staff to ensure adequate and speedy communication between patients and staff....

Health & Safety Code § 1259(a) (West Supp. 1994). Section 1259 goes on to provide for specific steps to be taken by acute care hospitals to ensure adequate communication between hospital staff and patients.

Section 1259 provides only for administrative and criminal remedies and does not appear to give rise to a private right of action.

*See* Health & Safety Code § 1259(d), (e) (West Supp.1994); § 1290 (West 1990). Plaintiffs' claims under section 1259 are therefore dismissed.

### CONCLUSION

For the foregoing reasons, the Court hereby DISMISSES the following claims WITHOUT LEAVE TO AMEND: CAD's claims for damages; Mrs. Aikins's claims for damages under the ADA; plaintiffs' claims against Dr. Lies under the ADA; and plaintiffs' claims under California Government Code section 11135 and Health and Safety Code section 1259.

Plaintiffs' remaining claims for injunctive relief are DISMISSED WITH LEAVE TO AMEND. Plaintiffs shall have until March 1, 1994, to amend those claims by making a more specific showing of standing, as set forth in Section I.

Summary judgment is DENIED to both defendants on Mrs. Aikins's claims for damages under the Rehabilitation Act. Summary judgment is DENIED on Mrs. Aikins's claims for damages under California Civil Code sections 51 and 54.1.

The parties are reminded that briefs submitted to this Court should comply with Local Rule 220-4, as well as other applicable provisions of the Local Rules.

SO ORDERED.