Lewis "Toby" TYLER, Plaintiff,

v.

The KANSAS LOTTERY,
et al., Defendants.

No. 95–4141–RDR.

United States District Court,
D. Kansas.

July 28, 1998.

Larry J. Leatherman, Palmer & Lowry, Topeka, KS, for Plaintiff.

William Scott Hesse, Office of Atty. Gen., Topeka, KS, Lawrence J. Logback, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, Kevin D. Case, Smithyman & Zakoura, Chtd., Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

In this case plaintiff attempts to establish that defendant, the Kansas Lottery, is required by Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134, to suspend the sale of Lottery tickets or refrain from licensing the sale of Lottery tickets at all retail locations in Kansas which are not accessible to disabled persons. This case is now before the court upon cross-motions for summary judgment. The motions were filed with the intention of presenting the court a legal issue for decision on the basis of undisputed facts. However, as mentioned during the hearing upon the motions, defendant's approach to or progress towards ADA compliance has changed since the case and the original motions for summary judgment were filed. In addition, plaintiff has moved to a different state, Wisconsin. This fluctuating factual background has caused some difficulty.

Plaintiff is not asking for damages to compensate for harm suffered from past discrimination. Plaintiff is asking for injunctive relief to correct the present and future situation. Therefore, it is important for the court to examine that situation, as opposed to the past, and to consider the question of whether plaintiff's change of domicile alters his standing to request injunctive relief. Defendant has submitted updated "supplemental evidence" in support of defendant's summary judgment motion. Plaintiff has had the opportunity to address this material in the hearing upon the instant motions and does not appear to dispute the factual allegations contained in the supplemental pleading. The court shall consider this case in light of those factual allegations.

Plaintiff is suing the Kansas Lottery and officers of the State of Kansas under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 ("ADA") and regulations promulgated thereunder. The Kansas Lottery was established in 1987. It offers a program with numerous games, some on-line and some off-line. The Lottery contracts with and licenses private retail locations to sell tickets. By statute, the Lottery cannot sell tickets at locations owned by the Lottery. Lottery retailers receive a percentage of revenue from ticket sales. No Lottery game requires participants to remain where the ticket was purchased in order to play.

At the time this lawsuit was filed, plaintiff lived in Manhattan, Kansas. He alleges in his complaint that he was denied access to nine retail lottery outlets in Manhattan, Kansas as well as unspecified outlets in Topeka, Kansas City, Salina and Wichita. Since the lawsuit was filed, plaintiff has moved to Wisconsin. But, it is represented to the court that he will continue to visit Kansas, specifically Manhattan, Kansas (where he has family), and that he will play the Kansas Lottery during his visits, particularly if the Lottery is high. Plaintiff is hemispherically paralyzed and uses a wheelchair as a result of a gunshot wound suffered when he was a police officer in Wisconsin.

In his complaint, plaintiff alleges that: the Lottery has not inspected and reviewed retail outlets which sell Lottery tickets to ensure compliance with the ADA; that the Lottery knowingly licenses retail outlets which are not accessible to the disabled; and that plaintiff has been denied participation in the Lottery by licensed retail outlets on several occasions. Specifically, plaintiff asserts: Count one—that the Lottery has failed to perform its duty of self-evaluation in violation of 28 C.F.R. § 35.105(a–c); Count two—that the Lottery has failed to remove barriers in violation of 28 C.F.R. § 35.105(c); Count three—that the Lottery has failed to implement a transition plan in violation of 28 C.F.R. § 35.150(d); Count four—that the Lottery knowingly and intentionally operates the sale of Lottery tickets in facilities which are inaccessible to the disabled in violation of Title II of the ADA and 28 C.F.R. § 35.149; Count five—that the Lottery violates 28 C.F.R. § 35.130(b)(4) and (b)(6); and finally, Count six—that the Lottery is excluding disabled persons from equal participation in the benefits of its ticket sales in violation of 42 U.S.C. § 12132.

Plaintiff seeks relief in the form of a permanent injunction ordering defendants to: perform a self—evaluation; implement a transition plan; bring all retail outlets in compliance with Title II of the ADA; remove all communication and architectural barriers from retail outlets; and provide equal access to and the equal benefits of the service of Lottery ticket sales. Plaintiff also asks for attorney's fees.

## TITLE II OF THE ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also, 28 C.F.R. § 35.149. The duty to conduct a self-evaluation is described in 28 C.F.R. § 35.105. This regulation requires public entities to evaluate "services, policies and practices" that do not or may not meet the requirements of Title II and to make necessary modifications. Interested persons and organizations must be provided a chance to participate in the self-evaluation process by submitting comments. The results of the self-evaluation must be kept on file by public entities employing 50 or more people. The duty to enact a transition plan is contained in 28 C.F.R. § 35.150(d). This regulation requires, where structural changes in facilities are necessary for program accessibility, that a transition plan be adopted by public entities. Interested persons and organizations must be provided an opportunity for input.

The regulations for Title II require that "[N]o qualified individual with a disability shall, on the basis of disability be excluded from participation in ... programs ... of a public entity." 28 C.F.R. § 35.130(a). In addition, "[a] public entity may not in determining the site or location of a facility make selections—(i) that have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or (ii) that have the

purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(4).

"A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. 35.150(a). This does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1).

## STANDARDS FOR A PERMANENT INJUNCTION

▉▉▉ Plaintiff asks for relief in the form of a permanent injunction. The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, except that the plaintiff must actually succeed on the merits. See *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *University of Texas v. Camenisch,* 451 U.S. 390, 392–94, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). So, in addition to proving success on the merits, plaintiff must also demonstrate an imminent threat of an irreparable injury, that the threatened injury outweighs the harm the injunction would cause the opposing party, and that the public interest is not harmed by the injunction. *Elam Constr., Inc. v. Regional Transp. Dist.,* 129 F.3d 1343, 1346–47 (10th Cir.1997) *cert. denied,* —— U.S. ——, 118 S.Ct. 1363, 140 L.Ed.2d 513 (1998); *Kansas Health Care Ass'n, Inc. v. Kansas Dept. of Soc. and Rehabilitation Servs.,* 31 F.3d 1536, 1542 (10th Cir.1994). Of course, an injunction is appropriate only where future conduct is at issue. " '[T]he moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.' " *Metzler v. IBP, Inc.,* 127 F.3d 959, 963 (10th Cir.1997) quoting, *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

## SUMMARY JUDGMENT STANDARDS

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Applied Genetics International, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

## STANDING

▉▉▉ The question must be raised whether plaintiff has standing to request injunctive relief since he has moved his residence to Wisconsin. This court has an "independent duty to inquire into its jurisdiction over a dispute;" the issue of standing is part of that inquiry. *Phelps v. Hamilton,* 122 F.3d 1309, 1315–16 (10th Cir.1997). " '[A] plaintiff must maintain standing at all times throughout the litigation for a court to retain jurisdiction.' " *Id.,* quoting *Powder River Basin Resource Council v. Babbitt,* 54 F.3d 1477, 1485 (10th Cir.1995).

■ To satisfy the requirements for standing for injunctive relief, plaintiff must demonstrate: 1) that he will suffer an injury in fact which is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical; 2) that the conduct complained of will cause the injury alleged; and 3) that it is likely, not speculative, that the injury will be prevented by a favorable decision. See *State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir.1998) quoting, *Bennett v. Spear*, 520 U.S. 154, ——, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997).

■ Plaintiff is not bringing this case as a class action. Although he unquestionably hopes that this action will aid other disabled persons, he is asking for relief as an individual. However, under the holding in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), plaintiff cannot obtain standing to sue for injunctive relief merely by alleging that defendant has a policy and practice of discriminating against disabled people in general; plaintiff must demonstrate that he himself faces a real and immediate threat of future harm, not a conjectural or hypothetical threat. In *Lyons,* the plaintiff alleged an incident in which a police officer placed him in a choke hold without provocation. The Court required a more extensive showing in order to have standing for injunctive relief.

> That Lyons may have been illegally choked by the police on October 6, 1976, ... does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id.* 461 U.S. at 105, 103 S.Ct. 1660; see also, *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.").

In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court rejected the standing arguments of conservation and environmental organizations which sought to extend the Endangered Species Act to actions of federal agencies in foreign nations. The

*Lujan* plaintiffs supported a claim of threatened injury with affidavits from persons who had observed endangered species in Egypt and Sri Lanka and intended to do so again in the future. The Court dismissed these efforts stating that " 'inten[t]' to return to the places they had visited before ... is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require [for standing]." *Id.*

In *Aikins v. St. Helena Hospital,* 843 F.Supp. 1329 (N.D.Cal.1994), the court dismissed a request for injunctive relief under the ADA brought by a deaf woman against a hospital that did not provide a sign-language interpreter in the emergency room. The plaintiff owned a mobile home seven miles away from the hospital and stayed in the mobile home several days each year. She had also previously taken her husband to the hospital for emergency treatment. Because plaintiff had not shown she was likely to use the hospital in the near future or the hospital would discriminate against her in the near future, the court held that plaintiff lacked standing to request injunctive relief.

In a similar case, *Naiman v. New York University,* 1997 WL 249970 (S.D.N.Y.1997), the court held that four prior visits to the emergency room of the NYU Medical Center did not supply sufficient proof of a "real or immediate threat" to demonstrate standing to request injunctive relief requiring a sign language interpreter at the facility. See also, *Schroedel v. New York University Medical Center,* 885 F.Supp. 594 (S.D.N.Y.1995).

■ To avoid summary judgment, a plaintiff must demonstrate standing "by specific evidentiary facts and not by mere allegations." *Phelps,* 122 F.3d at 1326. " 'It is a long-settled principle that standing alone cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record.' " *Id.,* quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

■ Plaintiff may have had standing to ask for injunctive relief as to Lottery retailers he was likely to visit when he was living in Kansas. But, he has never had standing to ask for statewide injunctive relief and his standing to ask for even a limited injunction, while a closer issue, was lost when he moved to Wisconsin. Plaintiff and his counsel indicate that plaintiff intends to visit Kansas, probably Manhattan where he has family, and to play the lottery when he does visit. However, the court does not have an evidentiary basis to tell where, or how often, or what lottery games plaintiff intends to play in Kansas or whether the location violates ADA standards.

Upon these facts, plaintiff does not have standing to ask for a statewide or more limited order directing the Lottery to rescind the license of noncompliant Lottery retailers. Plaintiff cannot prove a "concrete and particularized" interest in ADA compliance or an "actual and imminent" threat to plaintiff's rights under the ADA by Lottery retailers in Kansas.

## REQUEST FOR INJUNCTIVE RELIEF

The considerations employed in a standing analysis shade into those determining whether there is a sound basis for equitable or injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 499, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Consequently, it is no surprise that plaintiff cannot meet the requirements for injunctive relief. Even limiting plaintiff's claim to Manhattan, Kansas, the record does not support a permanent injunction.

■ Injunctive relief must be denied with regard to count one of the complaint, which asserts that defendant has failed to perform a self-evaluation. The record indicates that a self-evaluation plan has been completed and updated. See Exhibit A, Supplemental Evidence in support of Summary Judgment. The process of surveying Lottery retailers is ongoing and apparently will be concluded by the end of 1998. Input has been solicited from interested persons and organizations. Finally, plaintiff has not connected a concrete threat of discrimination to the failure to satisfactorily complete a self-evaluation plan. This is required for liability. See *McCready v. Michigan State Bar Standing Committee*, 926 F.Supp. 618, 622 (W.D.Mich.1995) *aff'd*, 100 F.3d 957, 1996 WL 637484 (6th Cir.1996). Accordingly, the court shall not issue injunctive relief to direct a self-evaluation plan.

■ The remaining counts of the complaint allege ADA violations which lead plaintiff to ask for an injunction to bring all Kansas Lottery retailers into compliance with the accessibility standards of Title II. It is apparent that at the present time a large number, perhaps more than half of all Lottery retailers, are not accessible in all respects to disabled persons. As of April 1998, there were approximately 1,825 Lottery retailers. Of these, 1,195 Lottery retailers had been surveyed by defendant for ADA compliance—45% were in compliance; 50% were not in compliance; 5% withdrew from the program. In Manhattan, Kansas the compliance percentages were considerably different: approximately 27 Lottery retailers were in compliance and 7 were not in compliance.[1] It appears that one of the retailers considered "in compliance" was permitted to offer curb service to persons unable to enter the retailer. Curb service involves delivering Lottery tickets to a location, e.g., a parking space, outside the retailer's building.

Defendant is working to reduce the number of outlets which do not comply with the ADA. As of January 1, 1997, defendant required previously uncertified applicants for Lottery licenses to comply with Title III of the ADA before receiving a license. Lottery retailers who were certified prior to January 1, 1997 have been or will be surveyed by defendant. The survey is done to determine compliance with Title II of the ADA. "Compliance" with Title II is apparently based on whether: 1) parking availability complies with the requirements of "ADAAG;" 2) there is a path of travel into the retailer location consistent with "ADAAG's" requirements; and 3) counter top height satisfies "ADAAG" specifications unless the height is set for

---

1. These figures were drawn by examining the list of compliant and noncompliant retailers in defendant's supplemental evidence. When the original summary judgment pleadings were filed, plaintiff admitted that he knew ten accessible locations in Manhattan to purchase Lottery tickets.

employee safety and a reasonable alternative accommodation is provided. "ADAAG" stands for "ADA Accessibility Guidelines for Buildings and Facilities." Under Title II, covered entities building new or altering existing facilities may follow either the Uniform Federal Accessibility Standards ("UFAS") or ADAAG. 28 C.F.R. § 35.151(c).

Defendant grants retailers not in compliance with Title II a limited time to make modifications to become accessible or provide an acceptable alternative method of service. If compliance or an acceptable alternative method of service is not implemented within the time allotted, the license to sell Lottery tickets is suspended or terminated. Modifications which cost in excess of 10% of the owner's average yearly commission over a two-year period may not be required, but some alternative method of accommodation must be implemented. Curb service is considered a reasonable accommodation in some circumstances. As of April 9, 1998, eight locations have been permitted to provide an alternative method of complying with Title II, such as providing curb service. One of those retail locations is in Manhattan, Kansas.

Defendant accepts complaints or grievances relating to ADA non-compliance by Lottery retailers. The retailer is informed of the complaint and, if the problem is not resolved, the complaint is forwarded to state and federal officials for investigation.

While acknowledging that some progress has been made, plaintiff contends that defendant has engaged mainly in foot-dragging or in failing to enforce strict time limits for compliance with ADA standards.

### Imminent threat of irreparable harm

Plaintiff has not demonstrated an imminent threat of irreparable harm. Treating plaintiff's and his counsel's statements as a proffer of evidence, plaintiff can demonstrate that he will probably travel to Manhattan, Kansas. But, it is unknown exactly when or how often or for how long he will be in Manhattan. Plaintiff can demonstrate that he might play the Kansas Lottery. Plaintiff can also demonstrate that it is possible he might be denied access because of his disability. But it is more probable that he would have access since the great majority of Lottery retailers in Manhattan appear to comply with ADA requirements. These facts are insufficient to demonstrate an imminent threat of harm which justifies injunctive relief.

### Balance of harms

It is unclear whether plaintiff is asking the court to direct that lottery ticket sales cease immediately at all retail locations which are not in compliance with Title II of the ADA or whether plaintiff is asking for an injunction which allows a period for transition. In any event, it is clear that plaintiff is requesting a much more stringent deadline than plaintiff believes defendant is enforcing at the present time. If plaintiff is requesting an immediate cessation of lottery activity at all retailers in Kansas which do not comply with ADA requirements, that would cause a great hardship. It is undisputed that the Kansas Lottery produces revenue for the State in excess of $50 million annually. The loss of a sizable portion of this revenue (assuming a 50% non-compliance rate) outweighs the benefit of increasing the already substantial probability that plaintiff can play the Kansas Lottery on his occasional visits to Manhattan, Kansas, particularly since defendant has a plan to achieve compliance with the ADA over time.

If plaintiff is asking for an injunction with a transition period, the hardship would be less, but the advantage over defendant's current efforts would be less as well.

If the injunction was limited to lottery outlets in Manhattan, the balance of harms still weighs against plaintiff. Defendant would lose revenue without significantly increasing plaintiff's access to the lottery program.

### Public Interest

An injunction immediately suspending the sale of lottery tickets at all locations not in compliance with Title II of the ADA would have a significant adverse impact on the revenue generated for the public by the Lottery as well as on the accessibility of lottery tickets for the general public. The accessibility of tickets for disabled persons might improve in the future if an immediate shutdown of noncompliant outlets spurred swifter efforts towards compliance than are currently being

made under defendant's plan. However, this is speculative. On the whole, it appears that a statewide injunction against lottery ticket sales in noncompliant outlets would cause a loss of revenue which overall would be adverse to the public interest.

The same calculus is involved if injunctive relief was limited to lottery retailers in Manhattan. Disabled persons in Manhattan appear to have access to the lottery program at numerous outlets. Moreover, the number of accessible outlets may be increasing under defendant's ADA plan. Even assuming that an injunction would cause noncompliant outlets to become accessible rather than withdraw from the program, the public benefit of increasing the number of outlets accessible to persons with disabilities would be outweighed by damage to the public interest from the short-term loss of revenue.

*Success on the merits*

The record before the court supports the conclusion that there is not statewide compliance with Title II of the ADA, although defendant is working toward that goal. Narrowing the focus to the Manhattan area, it appears that the program accessibility requirements of Title II have been attained. The relevant regulations require that a public entity operate a program which "viewed in its entirety" is readily accessible to and usable by persons with disabilities. 28 C.F.R. § 35.150(a). This does not require that all "existing facilities" (those constructed before January 26, 1992) be accessible to and usable by persons with disabilities. *Id.* Nor does it require that existing buildings leased by public entities after the effective date of the ADA meet the accessibility standards of buildings constructed after January 26, 1992. Appendix A to 28 C.F.R. § 35.151. Actually, defendant's plan for ADA compliance may exceed the requirements of the law by mandating that existing facilities comply with certain ADAAG requirements, when it is not necessary for program accessibility. Only facilities built or altered after January 26, 1992 ("new construction and alterations") must satisfy minimum accessibility standards

regardless of program accessibility. 28 C.F.R. § 35.151.

The court rejects plaintiff's claim that the site selection provisions of 28 C.F.R. § 35.130(b)(4) prohibit defendant from contracting with an inaccessible retailer if the program viewed in its entirety is accessible to persons with disabilities. The site selection provisions are contained in the "general requirements" subpart of the Title II regulations and must be read in the context of "program accessibility." *Anderson v. Pennsylvania Department of Public Welfare*, 1 F.Supp.2d 456 (E.D.Pa.1998); but see *Paxton v. State Department of Tax and Revenue*, 192 W.Va. 213, 451 S.E.2d 779, 785 (1994) (holding generally that the West Virginia Lottery is subject to the general requirements of § 35.130(b)(1) without determining the applicability of the program accessibility regulations in § 35.150(a)). The court also rejects any claim that an otherwise "existing facility" should be treated as a "new facility" because the contract to sell lottery tickets was granted or renewed after January 26, 1992. *Anderson* 1 F.Supp.2d at 464–65.

Under the facts presented to the court, it is unclear whether the noncompliant Manhattan lottery retailers are "existing facilities" which have not complied with Kansas Lottery requirements or "new or altered facilities" which are not in compliance with Kansas Lottery *and* ADA regulations. Therefore, technical compliance with the ADA in the Manhattan area is not clear. In general, however, the court believes the Lottery program is accessible to plaintiff in Manhattan.[2]

Finally, the court acknowledges that plaintiff's access to restrooms at Lottery retailers and his access to the Keno game are two tangential issues related to the merits of his claims. The court finds that access to restrooms is not required for participation in the Lottery program. Public restrooms are not a requirement for a Lottery license. Therefore, the court finds no grounds to require defendant to license only those retailers with restrooms accessible to persons with disabili-

---

**2.** Consequently, a transition plan as to the Manhattan area retailers is not required by 28 C.F.R.

§ 35.150(d).

ties. As for Keno, the record demonstrates that persons can participate in the Keno game without access to video monitors, restrooms or tables for social interaction. Furthermore, plaintiff has not demonstrated a probability of playing Keno when he visits Kansas. Accordingly, the court finds no grounds to grant an injunction on these grounds.

*Summary*

To summarize, it is possible that plaintiff could prove a violation of the ADA by defendant. However, plaintiff cannot establish an imminent threat of injury, a favorable balance of harms, or that an injunction would not be adverse to the public interest. Therefore, summary judgment must be granted against plaintiff's claims for injunctive relief.

**ATTORNEY'S FEES**

Plaintiff has asked for attorney's fees. Under the ADA, "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court ... in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expense, and costs." 42 U.S.C. § 12205. An award of attorneys' fees is available under the ADA under the same standard as Title VII or § 1988. See *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1232 (10th Cir.1997).

In the instant case, it is possible that plaintiff is entitled to an award of attorney's fees under the catalyst test, i.e., if he can prove that his lawsuit produced voluntary action by defendant which afforded plaintiff some of the relief he requested through a judgment. See *Beard v. Teska,* 31 F.3d 942, 951 (10th Cir.1994) (describing catalyst test). Plaintiff may have standing to raise this claim since his right to attorney's fees may have accrued while he was living in Kansas and had standing to ask for at least limited injunctive relief. Accordingly, the court shall not grant summary judgment against plaintiff's claim for attorney's fees. This claim remains open and the court urges the parties to meet with an eye toward settling this issue.

**CONCLUSION**

■ The doctrine of standing bars this court from considering generalized grievances or claims raising another person's legal rights. *State of Utah,* 137 F.3d at 1203, quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Plaintiff must demonstrate that he is immediately in danger of sustaining some direct injury as a result of defendant's alleged illegal conduct. *Phelps,* 122 F.3d at 1316, quoting, *Lyons,* 461 U.S. at 101–02, 103 S.Ct. 1660.

The court is convinced that plaintiff cannot establish standing to ask this court for injunctive relief. The court is further convinced that, if plaintiff had standing, plaintiff could not demonstrate the elements necessary for a permanent injunction. However, plaintiff may be able to prevail upon his claim for attorney's fees because this lawsuit has arguably spurred defendant to take actions required by the ADA and requested as part of plaintiff's claim for relief.

Accordingly, the court shall deny plaintiff's motion for summary judgment. The court shall grant defendant's motion for summary judgment as to all claims except plaintiff's claim for attorney's fees. To reiterate, the parties are requested to meet with the purpose of settling the attorney's fees claim.

**IT IS SO ORDERED.**