**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 12 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS
TENT CIRCUIT

FRED W. PHELPS, SR.; JONATHAN B.
PHELPS, KARL D. HOCKENBARGER,
CHARLES F. HOCKENBARGER;
TIMOTHY B. PHELPS, and
MARGIE J. PHELPS,

      Plaintiffs-Appellants,

v.

JOAN HAMILTON, in her official
capacity as District Attorney,

      Defendant-Appellee.

No. 95-3251

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 93-CV-4148)

Elizabeth M. Phelps, Phelps-Chartered, Topeka, Kansas, and Margie J. Phelps, Topeka, Kansas, for Plaintiffs-Appellants.

Deanne Watts Hay and Martha A. Peterson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., Topeka, Kansas, for Defendant-Appellee.

Before BRORBY, HENRY, and MURPHY, Circuit Judges.[*]

---

[*]      After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

HENRY, Circuit Judge.

This is one of a series of cases initiated by the plaintiffs-appellants seeking declaratory and injunctive relief under 42 U.S.C. § 1983 from eleven state criminal prosecutions arising from their anti-homosexual picketing and from state statutes which allegedly threaten their picketing activities. The plaintiffs allege that the criminal prosecutions and the three state statutes in question target and deter their constitutionally protected religious picketing. On summary judgment, the district court held that: (1) a state court determination that the criminal prosecutions were not brought in bad faith violation of the plaintiffs' constitutional rights was entitled to full faith and credit pursuant to 28 U.S.C. § 1738; (2) the Kansas Funeral Picketing Act was unconstitutionally vague; and (3) the plaintiffs did not have standing to challenge the Kansas anti-stalking law and Kansas telephone and fax harassment law. Thereafter, the district court lifted an agreed stay of the state criminal proceedings and, after the Kansas legislature amended the Kansas Funeral Picketing Act, denied the plaintiffs' request to modify or supplement its original order regarding the constitutionality of the Kansas Funeral Picketing Act. The plaintiffs now appeal. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm in part and reverse and remand in part.

**BACKGROUND**

Plaintiffs Charles F. Hockenbarger, Karl D. Hockenbarger, Jonathan B. Phelps, Fred W. Phelps, Sr., Margie J. Phelps, and Timothy B. Phelps are members of the Westboro Baptist Church in Topeka, Kansas, who are involved in anti-homosexual protests and picketing in Shawnee County, Kansas and other locations within and outside of Kansas. Since 1991, the plaintiffs and other members of the Westboro Baptist Church have engaged in a campaign against homosexuality through demonstrating, picketing, and distributing fliers at public and private events. The plaintiffs regularly picket outside public buildings and churches, in a park frequented by homosexuals, and at funerals of people who have died of AIDS. The messages conveyed by the plaintiffs' picketing signs and fliers include: "God Hates Fags"; "No Fags in Heaven"; "Fags are Worthy of Death, Rom. 1:32"; "Turn or Burn"; "Fag Church"; "God's Hate is Great"; "Hate is a Bible Value"; and "Topeka, Kansas, Sodom City." The plaintiffs' message and activities have been received with great controversy in the local community and have been the subject of much public discourse and media attention.

Against this background, defendant Joan Hamilton ran for the office of Shawnee County District Attorney in 1992. Ms. Hamilton focused much of her campaign platform on her opposition to "hate speech," particularly the plaintiffs' anti-homosexual activities. During the campaign, Ms. Hamilton made numerous public comments and utilized campaign literature in which she made clear her dislike for the plaintiffs' activities. On

3

more than one occasion, Ms. Hamilton promised that, if elected, she would "get the plaintiffs off the streets."

Ms. Hamilton was elected as district attorney in November 1992, and sworn into office in January 1993. Between January and October 1993, Ms. Hamilton commenced nine prosecutions against the six plaintiffs for actions related to their picketing activities and confrontations with counter-demonstrators. In addition, Ms. Hamilton assumed responsibility for two additional prosecutions begun by her predecessor in office. The criminal charges in the eleven cases include: assault, battery, criminal damage to property, unlawful restraint, disorderly conduct, and aggravated intimidation of a victim. For purposes of our analysis in this case, the underlying state prosecutions can be grouped into two general categories: those that were filed before July 14, 1993 and those that were filed after July 14, 1993.[2]

---

[2] The underlying state court prosecutions are as follows:

Charles F. Hockenbarger:
    Case 92-CR-3172: Battery                       (filed Dec. 22, 1992)
    Case 93-CR-276: Criminal damage to property    (filed Feb. 2, 1993)
    Case 93-CR-2834: Battery/unlawful restraint     (filed Oct. 7, 1993)
Karl D. Hockenbarger:
    Case 92-CR-3173: Battery                       (filed Dec. 22, 1992)
    Case 93-CR-2835: Battery (two counts)/unlawful restraint  (filed Oct. 2, 1993)
Jonathan B. Phelps
    Case 93-CR-274: Assault                      (filed Feb. 2, 1993)
    Case 93-CR-1966: Aggravated intimidation of a witness  (filed July 15, 1993)
    Case 93-CR-2833: Battery/unlawful restraint     (filed Oct. 7, 1993)
Fred W. Phelps, Sr.
    Case 93-CR-326: Disorderly conduct/
               aggravated intimidation of a witness    (filed Feb. 17, 1993)
Margie J. Phelps

In March 1993, the first four of the plaintiffs charged in the state prosecutions filed prior to July 14, 1993--Charles Hockenbarger, Karl Hockenbarger, Jonathan Phelps, and Fred Phelps--filed motions in the state trial court requesting dismissal of the charges against them on the grounds of selective prosecution, prosecutorial vindictiveness or animus, government misconduct, and bad faith prosecution in violation of their constitutional rights.[3] In March and April 1993, a state trial judge conducted evidentiary hearings on the motion to dismiss in the first Jonathan B. Phelps case, 92-CR-274. Based upon that hearing, the judge denied the motion to disqualify the prosecutor and dismiss the case. This order was certified for interlocutory appeal, but the Kansas Court of Appeals declined to hear the appeal. Subsequently, in July 1993, another state trial judge, relying on the evidentiary hearing record developed in the Jonathan Phelps case, denied the three other plaintiffs' motions to disqualify the prosecutor and dismiss the case.

The plaintiffs then brought the present 42 U.S.C. § 1983 action seeking to have the eleven pending state criminal prosecutions declared unconstitutional and to enjoin any future prosecution under those laws or any other state law for any conduct which is

---

Case 93-CR-2831: False reporting of a crime      (filed Oct. 7, 1993)
Timothy B. Phelps
Case 93-CR-2836: Battery/unlawful restraint      (filed Oct. 7, 1993)

[3] Jonathan Phelps filed a motion to dismiss in Case No. 93-CR-274 on March 10, 1993. Karl Hockenbarger filed a motion to dismiss in Case Nos. 92-CR-3173 on March 12, 1993. Charles Hockenbarger filed motions to dismiss in Case Nos. 92-CR-3172 and 93-CR-276 on March 12 and 16, 1993, respectively. Finally, Fred Phelps filed a motion to dismiss in Case No. 93-CR-326 on March 31, 1993.

protected speech. The plaintiffs also challenge the constitutionality of three Kansas laws under which they have not been charged and seek to prospectively enjoin any future prosecution under those laws. These laws are the Kansas Funeral Picketing Act, Kan. Stat. Ann. § 21-4015 (1995); the Kansas Anti-Stalking Statute, Kan. Stat. Ann. § 21-3438 (1995); and the telefacsimile amendment to the Kansas Telephone Harassment Statute, Kan. Stat. Ann. § 21-4113 (1995).

The district court addressed the plaintiffs' claims in a number of separate orders, five of which are relevant to the current appeal. First, on December 23, 1993, the district court ruled that while the plaintiffs had constitutional standing to bring a facial challenge to the Kansas Funeral Picketing Act, they did not have standing to challenge the Kansas Anti-Stalking Statute or the telefacsimile amendment to the Kansas Telephone Harassment Statute either as applied or facially. Second, on March 31, 1995, the district court granted Ms. Hamilton partial summary judgment, holding that the state trial court rulings that the state prosecutions were not brought in bad faith were entitled to full faith and credit pursuant to 28 U.S.C. § 1738. Third, on April 28, 1995, the district court granted the plaintiffs summary judgment on their facial challenge to the Kansas Funeral Picketing Act, finding the statute unduly vague in its use of the terms "before" and "after a funeral." Fourth, after the Kansas legislature amended this language in the Kansas Funeral Picketing Act to read "within one hour prior to, during and two hours following the commencement of a funeral," the district court, on July 27, 1995, denied the

plaintiffs' motion for modification and supplementation of the April 28, 1995 order--a motion which sought rulings on other constitutional aspects of the Kansas Funeral Picketing Act. Finally, on July 27, 1995, the district court lifted an agreed stay of the state court criminal proceedings, allowing the underlying state prosecutions to go forward.

In this appeal, the plaintiffs argue: (1) that the district court erred in granting summary judgment for Ms. Hamilton on the bad faith prosecution claims based upon full faith and credit; (2) that the district court erred in declining to rule on the constitutionality of the amended Kansas Funeral Picketing Act; (3) that the court erred in lifting an agreed order staying the criminal cases; and (4) that the court erred in concluding that the plaintiffs lacked standing to challenge the anti-stalking and fax harassment laws.[4] We address plaintiffs' arguments in turn after first addressing the question of whether each of the six plaintiffs has constitutional standing to maintain his or her claims on appeal.

**DISCUSSION**

---

[4] Also before the court are Ms. Hamilton's motions to strike the plaintiffs' supplemental authorities and for leave to supplement the record. We grant Ms. Hamilton's motions insofar as we strike those portions of the plaintiffs' supplemental authorities memorandum that are argumentative, see Fed. R. App. P. 28(j) ("the letter shall without argument state the reasons for the supplemental citations"), and supplement the record to reflect the current status of the eleven state court criminal proceedings.

# I. The Plaintiffs' Standing to Seek Prospective Relief on the Bad Faith Claims

The six plaintiffs in this case seek equitable relief with regard to their bad faith prosecution claims. The plaintiffs requested a judgment declaring the underlying state prosecutions unconstitutional and enjoining those prosecutions and any future prosecutions which may be brought against them. Since the filing of the plaintiffs' last amended complaint in this § 1983 action, however, six of the eleven state prosecutions that are the subject of this suit have been dismissed in state court. The result of these dismissals is that two of the six plaintiffs, Karl Hockenbarger and Timothy Phelps, no longer have criminal charges pending against them--limiting their remedies to prospective relief.[5] Because the two plaintiffs can no longer demonstrate a present injury from which they seek redress, we must examine whether these plaintiffs have constitutional standing to maintain their claims in this case. See Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991) (stating that a plaintiff cannot maintain standing in a declaratory or injunctive relief action "unless he or she can demonstrate a good chance of being likewise injured in the future."). As we have previously held, "a plaintiff must maintain standing at all times

---

[5] The criminal charges against Karl Hockenbarger were dismissed in Case No. 92-CR-3173 on January 3, 1996; and in Case No. 93-CR-2835 on January 23, 1996, after a jury acquitted him on two counts of battery and one count of unlawful restraint. The criminal charges against Timothy Phelps in Case No. 93-CR-2836 were dismissed on January 23, 1996, after he was acquitted by a jury on one count of battery and one count of unlawful restraint.

8

throughout the litigation for a court to retain jurisdiction." Powder River Basin Resource Council v. Babbitt, 54 F.3d 1477, 1485 (10th Cir. 1995). Because this court has an independent duty to inquire into its jurisdiction over a dispute, we proceed to examine this issue sua sponte. See Lopez v. Behles, 14 F.3d 1497, 1499 (10th Cir. 1994).

Article III of the Constitution limits the federal courts to adjudicating actual cases and controversies. See Allen v. Wright, 468 U.S. 737, 750 (1984). This provision requires that a litigant have "standing" in order to invoke the power of a federal court. Id. The essence of the standing doctrine is that each plaintiff must allege a personal injury fairly traceable to Ms. Hamilton's allegedly unlawful conduct and likely to be redressed by the requested relief. See id. at 751. In order to satisfy the jurisdictional prerequisite of standing, the plaintiff must do more than allege abstract injury, he must show that he "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (citing Golden v. Zwickler, 394 U.S. 103, 109-110 (1969)).

In Lyons, the Supreme Court made clear that plaintiffs may lack standing to seek prospective relief when the challenged conduct is no longer continuing. The plaintiff in Lyons sued the City of Los Angeles and several police officers, alleging that the officers had stopped him for a routine traffic violation and applied a "choke-hold" without provocation. 461 U.S. at 97. Among other things, the plaintiff requested an injunction

against the future use of choke-holds by the Los Angeles police department unless the suspect threatened to use deadly force. Id. at 98. The Court held that Mr. Lyons lacked standing to seek prospective injunctive relief because he could not show a real or immediate threat of future harm. Id. at 105. In reaching this conclusion, the Court relied on its earlier decision in O'Shea v. Littleton, 414 U.S. 488 (1974), wherein it stated that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" 461 U.S. at 102 (quoting O'Shea, 414 U.S. at 495-96). To obtain equitable relief for past wrongs, the Court held that "Lyons would have had not only to allege that he would have another encounter with the police, but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner." Id. at 105-06.

Under the standing doctrine as developed in Lyons and O'Shea, we conclude that those plaintiffs in this case who do not have on-going state prosecutions and, therefore seek relief based solely on past prosecutions, do not meet Article III's "case or controversy" requirement sufficient to maintain standing to appeal the district court's ruling on their bad faith prosecution claims. These plaintiffs do not allege in the complaint or elsewhere that they have ever been subjected to prosecution prior to those

10

prosecutions on which the present action is based or that they likely will be in the future. Like the plaintiff in Lyons, neither Karl Hockenbarger nor Timothy Phelps can establish a real and immediate threat that they again will be subject to prosecution for their picketing or protesting activities under valid state criminal laws.

Furthermore, in suing Ms. Hamilton in her official capacity as district attorney, these plaintiffs seek not only to enjoin Ms. Hamilton but also anyone in the Office of the District Attorney for the Third Judicial District of Kansas from hereafter prosecuting them for their allegedly protected activities. See Brandon v. Holt, 469 U.S. 464, 471-73 (1985) (holding that an "official capacity" claim is against the defendant's office only, not the individual defendant). Even if these two plaintiffs could demonstrate that Ms. Hamilton had acted in bad faith in the past, as with the plaintiff in Lyons, they do not allege either that all prosecutors working in the district attorney's office presently and in the future will always prosecute them in bad faith violation of their First Amendment rights or that there is a policy in that office to act in such manner toward plaintiffs.

We are also reluctant to allow Karl Hockenbarger and Timothy Phelps to proceed with their bad faith prosecution claims for prospective declaratory and injunctive relief due to federalism and comity concerns. As the Supreme Court stated in O'Shea, the "recognition of the need for a proper balance in the concurrent operation of federal and state courts counsels restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws . . . ." 414 U.S. at 499. In this

11

case, as in O'Shea, where the plaintiffs sought to enjoin the alleged discriminatory actions of a county magistrate and judge, the two plaintiffs have only challenged past prosecutions brought under valid state criminal laws. Thus, what the plaintiffs seek is "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future criminal [proceedings]." Id. at 500. In essence, the plaintiffs in this case ask us to monitor the local district attorney's office to insure that they are not prosecuted under valid state laws for any occurrences related to their alleged protected speech and activity. Such a request for relief fits squarely within the O'Shea Court's admonition that a "federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable." Id. at 500.

Based on the foregoing analysis, we conclude that we do not have jurisdiction to hear those plaintiffs' appeals whose underlying state prosecutions have been dismissed because this court does not have jurisdiction to issue prospective relief in this instance. Accordingly, we dismiss Karl Hockenbarger and Timothy Phelps as appellants with regard to their appeals of the district court's ruling on their bad faith prosecution claims. Because the remaining four plaintiffs--Charles Hockenbarger, Jonathan Phelps, Fred Phelps, and Margie Phelps--do have pending state prosecutions, and therefore can demonstrate a present "case or controversy," we proceed to analyze their appeal of the district court's full faith and credit ruling.

12

## II. Full Faith and Credit and Collateral Estoppel

In response to the plaintiffs' § 1983 suit, Ms. Hamilton moved for summary judgment on the basis that the district court should give full faith and credit to the state court findings on the plaintiffs' bad faith claims. The district court, in its March 31, 1995 order, held that, under the Full Faith and Credit Act, 28 U.S.C. § 1738, it must give the state court rulings on the issue of bad faith prosecution the same preclusive effect that the rulings would be given in the Kansas state courts. Aplts' Br. att. C (Dist. Ct. Order dated Mar. 31, 1995) [hereinafter "Dist. Ct. Order dated Mar. 31, 1995"]. The district court concluded that the legal issues in this case were conclusively settled by the Kansas courts and that it was collaterally estopped from reconsidering those rulings. Id. at 11.

On appeal, the plaintiffs argue that the district court erred in applying the Kansas collateral estoppel doctrine on four main points. First, the plaintiffs argue that the court erred in finding that all the plaintiffs were in privity with one another such that the evidentiary hearings and findings in the Jonathan Phelps case could be applied against the other plaintiffs. Second, they argue that Ms. Hamilton's bad faith violations continued past the date of the last state court hearing, and, thus, are distinct from the issue considered in the state court proceedings. Third, the plaintiffs argue that full faith and credit should not apply in this case because of a prior district court ruling that the prosecutions were brought in bad faith. Finally, they argue that the state court

13

proceedings were so infected with bias, "that it is impossible to conclude that the constitutional rights of these plaintiffs were protected therein . . . ." Aplts' Br. at 38.

We review a grant of summary judgment de novo, applying the same legal standard as the district court under Fed. R. Civ. P. 56(c). See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the record and reasonable inferences therefrom in the light most favorable to the nonmoving party. See id. If there is no genuine issue of material fact in dispute, we must determine whether the district court correctly applied the law. See id.

The Full Faith and Credit Act, 28 U.S.C. § 1738, codifies the Full Faith and Credit Clause of the Constitution, Art. IV, § 1. The statute provides, in pertinent part, that the "records and judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738 (1994). In Allen v. McCurry, 449 U.S. 90, 96 (1980), the Supreme Court held that § 1738 requires that federal courts give state court rulings the same preclusive effect in a subsequent § 1983 case that the rulings would have in the courts of that state. However, that preclusive effect will not apply in federal court "where the party against whom an earlier court decision is asserted

14

did not have a full and fair opportunity to litigate the claim or issue decided by the first court." Id. at 101. Under this standard, we must determine first whether, under the collateral estoppel rules of Kansas, the previous rulings by the state trial courts bar the plaintiffs from maintaining their present civil rights action; and second, whether the plaintiffs had a "full and fair opportunity" to litigate their claims in state court.

Collateral estoppel, or issue preclusion, means that once "'an issue of ultimate fact has [] been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" State v. Fisher, 661 P.2d 791, 797 (Kan. 1983) (quoting Ashe v. Swenson, 397 U.S. 436, 443 (1970)). Under Kansas law, collateral estoppel may be invoked as a bar to litigation when the following is shown: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue, based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties are the same or in privity; and (3) the issue was actually determined and was necessary to support the judgment. See Jackson Trak Group, Inc. v. Mid States Port Auth., 751 P.2d 122, 128 (Kan. 1988).

### A. Was There a Final Judgment on the Merits?

Our first inquiry is to determine whether there was "a prior judgment on the merits which determined the rights and liabilities of the parties on the issue, based upon ultimate facts as disclosed by the pleadings and judgment." Id. at 128. The principal question

15

here is whether the state trial court's resolution of the plaintiffs' motions to dismiss was sufficiently final to render those state decisions final for collateral estoppel purposes. It is well established law in Kansas that "where a court has jurisdiction of the parties to an action and of the subject matter thereof, and renders a judgment within its competency, such judgment is final and conclusive, unless corrected or modified on appeal." McFadden v. McFadden, 357 P.2d 751, 755-56 (Kan. 1960).

Furthermore, the Kansas courts have adopted the now-majority view regarding the pendency of appeals which provides that the fact that an appeal is pending in a case does not generally vitiate the res judicata effect of a judgment. See Willard v. Ostrander, 32 P. 1092, 1093-94 (Kan. 1893); Munn v. Gordon, 125 P. 7, 8 (Kan. 1912); see also, 18 C. Wright et al., Federal Practice and Procedure § 4433, at 308 (1981) (noting established rule in federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal).

In the present case, the Shawnee County District Court fully considered the plaintiffs' bad faith claims which were raised in four of the plaintiffs' motions to dismiss and disqualify Ms. Hamilton and all her assistants as prosecutors. The state district court first addressed this issue in the Jonathan Phelps case. After conducting two evidentiary hearings in which 42 witnesses testified and over 70 exhibits were admitted, the trial judge denied the motion in a written order, finding that "[t]here is no credible evidence of prejudice on the part of Hamilton against this defendant, and there is no credible evidence

16

that defendant is being treated unfairly." Aple's App., vol. V, at 836 (Order denying defendant's motion to disqualify, dated April 9, 1993). This decision was then certified by the judge as a "final decision" for interlocutory appeal. See id. at 837 (Certification for interlocutory appeal, dated Apr. 9, 1993). In later proceedings on the identical motions of Charles Hockenbarger, Karl Hockenbarger, and Fred Phelps, a second trial judge considered the full record of the Jonathan Phelps proceeding and similarly denied the motions to dismiss and disqualify Ms. Hamilton. See id. at 865-866 (Supplemental Order dated July 15, 1993). Because the plaintiffs' bad faith claims were fully addressed by two state trial judges who denied each of these four plaintiffs' motions to dismiss and disqualify Ms. Hamilton, this issue is "final" under Kansas law until such time that it is modified on direct appeal.

## B. Are the Plaintiffs in Privity?

The second requirement of the Kansas collateral estoppel doctrine is that "the parties [are] the same or in privity." Jackson Trak Group, 751 P.2d at 128. The Kansas Supreme Court has stated that the definition of "privity" is not fixed such that it can be automatically applied in all cases. See Goetz v. Board of Trustees, 454 P.2d 481, 490 (Kan. 1969). "A determination of the question as to who are privies requires careful examination into the circumstances of each case as it arises." Id. The general rule in Kansas is that a judgment may not be rendered for or against one who is not a party to the

action or who does not intervene therein. See Winsor v. Powell, 497 P.2d 292, 297 (Kan.

1972). Kansas, however, recognizes an exception to this rule where:

> A person who is not a party but who controls an action, individually or in
> co-operation with others, is bound by the adjudication of litigated matters as
> if he were a party if he has a proprietary or financial interest in the judgment
> or in the determination of a question of fact or of a question of law with
> reference to the same subject matter or transaction; if the other party has
> notice of his participation, the other party is equally bound.

Id. at 298 (quoting Restatement of Judgments § 84).

According to the Restatement, "control," for purposes of issue preclusion, refers to

the ability to exercise "effective choice as to the legal theories and proofs to be

advanced," as well as "control over the opportunity to obtain review." Restatement

(Second) of Judgments § 39 cmt. c (1982). However, the "control" need not be exercised

directly by the non-litigating party. "It is sufficient that the choices were in the hands of

counsel responsible to the controlling person; moreover, the requisite opportunity may

exist even when it is shared with other persons." Id.

Due to the dismissal of two of the original six plaintiffs from this appeal, the

question confronting us is whether appellant Margie Phelps--who was not a party to the

motions to dismiss--may be held to be in privity with the remaining plaintiffs--Jonathan

Phelps, Charles Hockenbarger, and Fred Phelps--such that she may be bound by the state

courts' rulings on those three plaintiffs' motions to dismiss Ms. Hamilton. We hold that

Margie Phelps is in privity with the other plaintiffs for two independent reasons. First,

our examination of the record in this case leads us to conclude that throughout the state

18

and federal court proceedings in this matter, the plaintiffs have continually asserted that they have been singled out by Ms. Hamilton as one entity because of their common membership in the Westboro Baptist Church and their picketing activities. Second, in applying the definition of "control" for purposes of finding privity, it is clear that Margie Phelps, as listed attorney for each of the plaintiffs, not only had input into the legal theories and arguments advanced, but could be said to be directly responsible, along with co-counsel, for "controlling" the entire course of the state court proceedings. On this basis, we hold that privity exists between the parties in this action such that Margie Phelps may be bound by the state court determinations on the other three plaintiffs' motions to dismiss.

### C. Was this Issue Decided by the State Courts?

The final determination under the collateral estoppel doctrine is whether the issue was actually "determined and necessary to support the judgment." Jackson Trak Group, 751 P.2d at 128. The Kansas Supreme Court has held that the doctrine of collateral estoppel may be invoked "only as to questions and issues shown to have been actually decided in the prior action." Frey v. Inter-State Sav. and Loan Assoc. of Kansas City, 601 P.2d 671, 674 (Kan. 1979). While collateral estoppel differs from claim preclusion--in that instead of preventing a second assertion of the same claim or cause of action, it prevents a second litigation of the same issue in connection with a different claim or

19

cause of action--the subject matter and operative facts of the first and second claims must

be the same. As stated by the Kansas Supreme Court:

> The true rule, now well established, is that where a second action between
> the same parties is upon a different claim or demand, the judgment in the
> prior action operates as an estoppel only as to those matters in issue upon
> the determination of which the finding was made or the judgment rendered,
> and does not extend to matters which might have been but were not litigated
> and determined in the former action.

Stroup v. Pepper, 76 P. 825, 826 (Kan. 1904). Thus, the essential question here is

whether the bad faith claim brought in federal court was considered and decided on its

merits in the previous state court proceedings. See Jackson Trak Group, 751 P.2d at 128-

29.

In the first five state court prosecutions, Jonathan Phelps, Charles Hockenbarger,

Karl Hockenbarger, and Fred Phelps each moved to dismiss the charges against them--all

of which were filed prior to July 14, 1993--on the grounds of bad faith prosecution,

government misconduct, and selective prosecution motivated by Ms. Hamilton's

disagreement with their constitutionally protected religious and speech activities. See,

e.g., Aple's Supp. App. vol. II, at 86 (Mem. in supp. of mot. to dismiss in State v.

Jonathan Phelps, Case No. 93-CR-274, dated Mar. 10, 1993). After extensive hearings on

the Jonathan Phelps motion to dismiss, the state trial court denied the motion, finding "no

legitimate reason to disqualify Hamilton and/or her staff as counsel in this case." Aple's

Suppl. App. vol. V., at 766 (Order denying defendant's motion to disqualify in State v.

20

Jonathan Phelps, Case No. 93-CR-274, dated Mar. 31, 1993).  A second state trial court then ruled upon the remaining three plaintiffs' identical motions to dismiss, finding, based upon the record in the Jonathan Phelps case, that there was no need to relitigate this issue and insufficient evidence to decide to the contrary.  Id. at 858, 862 (Transcript of Hearing in State v. Charles Hockenbarger, Case No. 92-CR-3172, dated July 14, 1993).

These state court decisions involved the same issue presently before this court with regard to the plaintiffs' claims originating from those same state court prosecutions.  In their § 1983 claim, each of the plaintiffs seeks declaratory and injunctive relief from their state criminal prosecutions, claiming that "the pending prosecutions by defendant of all plaintiffs [are] unconstitutional because of bad faith, because the prosecutions are based upon the content of plaintiffs' message, and because the prosecutions are primarily motivated by a desire to punish and silence protected speech."  Aplts' App. vol. II, at 719 (Plaintiffs' Second Amended Complaint dated Nov. 15, 1993).  Because the state and federal bad faith claims are identical in substance, we hold that the bad faith issue, insofar as it related to the pre-July 14, 1993 claims presently before us, was previously "considered and decided" by the Kansas state courts and the plaintiffs are collaterally estopped from relitigating that issue as it relates to the first five state prosecutions.

The remaining question is whether the plaintiffs' arguments that Ms. Hamilton's bad faith continued past the date of the final state court ruling on the motions to dismiss-- e.g., through the filing of six additional criminal charges--should have any effect on

whether the underlying state court proceedings determined the issue now brought in federal court. In assessing this question under the first prong of the Kansas collateral estoppel test, the district court held that whether or not "additional evidence was discovered subsequent to the state court decisions . . . is not persuasive and is not fatal to a finding of finality." Dist. Ct. Order dated Mar. 31, 1995 at 9. On appeal, the plaintiffs argue that because a substantial portion of their evidence in this case relates to six additional state cases which were filed after July 14, 1993, and were therefore not considered in the state court rulings, the district court erred in applying full faith and credit to all the criminal cases at issue in this case.

As stated above, Kansas law recognizes that collateral estoppel may only be invoked as to "questions and issues shown to have been <u>actually decided</u> in the prior action." <u>Frey</u>, 601 P.2d at 674. In applying this standard to the issue before us, we hold that the district court erred in barring the plaintiffs' entire § 1983 suit based upon the state court rulings in the first five, pre-July 14, 1993 cases. The injury the plaintiffs complain of in this case is not limited to the first five prosecutions; it includes Ms. Hamilton's conduct in filing six additional prosecutions after the date of the last state court determination upon which the district court relied. The bad faith alleged with regard to these later-filed cases cannot be conclusively determined based solely upon the facts alleged in the earlier cases.

In proving Ms. Hamilton's bad faith with regard to the later-filed prosecutions, the plaintiffs offer a voluminous record of evidence--principally related to the "Reverend Weeks incident," which occurred on September 5, 1993-- that was not before the state courts when the earlier rulings were made. Where there is neither a state court ruling on the plaintiffs' bad faith claim relating to these later-occurring events[6] nor, in the alternative, a determination by the district court that this additional evidence is not materially different from that presented and ruled upon by the state courts in the earlier prosecutions, we cannot say that this "issue was actually determined and was necessary to support the judgment" of the state courts. See Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 328 (1955) (holding that while a judgment may preclude recovery on claims arising prior to its entry, "it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case"); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 598 (1948) ("Since

---

[6]     Ms. Hamilton asserts in her supplemental memorandum that the state courts have since ruled in five of the post-July 14, 1993 cases--State v. Margie Phelps, Case No. 93-CR-2831, State v. Jonathan Phelps, Case No. 93-CR-2883, State v. Charles Hockenbarger, Case No. 93-CR-2832, State v. Karl Hockenbarger, Case No. 93-CR-2835, and State v. Timothy Phelps, Case No. 93-CR-2836--"that those cases were not brought in bad faith." Aple's Mem. in Supp. of Mot. for Leave to Supp. Record, at 3. However, Ms. Hamilton offers no documentation to support this assertion, nor are we able to find any evidence of these rulings in the record. Furthermore, even if such documentation were available, we would still be required to remand to the district court to determine whether full faith and credit should be afforded to these later proceedings. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 720-21 (10th Cir. 1993) (federal appellate courts generally do not consider issues not passed upon before the trial courts) (citing Singleton v. Wulff, 428 U.S. 106, 120 (1976)).

23

the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding . . . ."); Restatement (Second) of Judgments § 24 cmt. f. (1982) ("Material operative facts occurring after the decision of an action with respect to the same subject matter may . . . be made the basis of a second action not precluded by the first.").

On the basis of the foregoing analysis, we hold that the district court erred in ruling that the plaintiffs' present bad faith claim was entirely precluded under the Full Faith and Credit Act because of the state court rulings in five of the eleven state prosecutions at issue in this case.[7]  We remand this issue to the district court for the following considerations.  First, the district court should determine whether the state courts have

---

[7]      Ms. Hamilton argues in the alternative that, even if the district court erred in applying the full faith and credit doctrine, this court should abstain under Younger v. Harris, 401 U.S. 37 (1971), from hearing this case because it seeks to enjoin pending state court criminal proceedings.  While we acknowledge that this court may raise the abstention issue in the absence of a district court ruling, see Morrow v. Winslow, 94 F.3d 1386, 1390 (10th Cir. 1996), cert. denied, 117 S. Ct. 1311 (1997), we decline to do so in this instance because the district court previously determined that there were material facts in dispute as to whether the bad faith exception to the Younger abstention doctrine should apply and that further hearings would be necessary to resolve this issue.  Phelps v. Hamilton, 840 F. Supp. 1442, 1459 (D. Kan. 1993).  Because Ms. Hamilton subsequently moved for and was granted summary judgment on full faith and credit grounds, the district court never had the opportunity to resolve the disputed facts surrounding the application of the bad faith exception to Younger.  Furthermore, Ms. Hamilton has not sought appellate review of the district court's decision regarding the applicability of the bad faith exception to Younger nor explained why that ruling was incorrect.  Accordingly, we accept the district court's determination that there are material facts in dispute as to the applicability of the bad faith exception, and, as there has been no hearing to resolve these disputed facts, we refuse to rule as a matter of law that Younger abstention should apply in this case.

ruled on the bad faith claims in the post-July 14, 1993 cases, and if so, whether the disposition of these claims in state court collaterally estops plaintiffs' claims in federal court. Second, if the state courts have not made findings in the post-July 14 cases, the district court should determine whether the additional evidence surrounding these later-filed claims is materially different from the evidence presented and ruled upon in the earlier state court cases. If the evidence is not materially different, the district court should determine whether collateral estoppel should apply based upon the state court rulings in the pre-July 14 cases. Finally, if the above conditions are not met, the district court should resolve plaintiffs' bad faith claims arising from the post-July 14 cases on the merits.

### D. Did the Plaintiffs Have a "Full and Fair Opportunity" to Litigate Their Claim?

The plaintiffs raise two additional challenges to the district court's grant of full faith and credit to the state court rulings. First, the plaintiffs argue that full faith and credit should not apply in this case because of a prior district court ruling that the prosecutions were brought in bad faith. Second, they argue that the state court proceedings were so infected with bias "that it is impossible to conclude that the constitutional rights of these plaintiffs were protected therein." Aplts' Br. at 38. We analyze both of these arguments under the "full and fair opportunity" exception to full faith and credit, as recognized in Allen v. McCurry, 449 U.S. at 95.

25

As stated above, the Supreme Court has recognized that collateral estoppel should not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Id. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Montana v. United States, 440 U.S. 147, 164 n.11 (1979). In determining whether the state courts' judgments were fundamentally flawed, "we may only examine whether the state proceedings satisfied 'the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause.'" Kiowa Tribe of Okla. v. Lewis, 777 F.2d 587, 591 (10th Cir. 1985) (quoting Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982)).

The plaintiffs first argue that full faith and credit should not apply because the district court found evidence that the prosecutions were in bad faith and this is "[t]he law of this case." Aplts' Br. at 37. The law of the case doctrine provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Mason v. Texaco, Inc., 948 F.2d 1546, 1553 (10th Cir. 1991) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). Although the plaintiffs point to no specific order to support their assertion that the district court previously ruled that the prosecutions were brought in bad faith, they imply that the ruling occurred in Phelps v. Hamilton, 840 F. Supp. 1442 (D. Kan. 1993).

In that case, the district court addressed, among other things, whether the bad faith exception to the Younger abstention doctrine should apply with regard to enjoining the underlying state court prosecutions.  Id. at 1459.  The court ruled that it would not grant summary judgment because the "record reveals several genuine issues of material fact in deciding whether the bad faith exception [to Younger] applies here."  Id.  In so ruling, however, the district court specifically stated that "the court does not find that the defendant has acted in bad faith in bringing or prosecuting all or any of the pending criminal cases against the plaintiffs."  Id.  Because the plaintiffs are incorrect that the district court has ruled on the bad faith issue, and because our search of the record reveals no other district court order on point, we reject the plaintiffs' "law of the case" argument.

The plaintiffs' final contention is that this court should not apply full faith and credit to the state court rulings because the state judges were inherently biased.  The plaintiffs cite the content and language of the adverse rulings against them as well as the state district court judge's comments during a hearing regarding the shocking nature of their "religious activities."  To state a due process claim that a judge is biased, the claimant must show either that actual bias existed, or that an appearance of bias created a conclusive presumption of actual bias.  See Fero v. Kerby, 39 F.3d 1462, 1478 (10th Cir. 1994).

After reviewing the court orders and hearing transcript cited by the plaintiffs, we are unable to conclude that there was actual bias or an appearance of bias on the part of

the state court judge in his remarks regarding the plaintiffs' activities, which they themselves admit are controversial. Furthermore, as well-stated by the district court: "[T]he fact that plaintiffs/state court defendants were not successful, alone, is not evidence of bias on the part of the state courts." Dist. Ct. Order dated Mar. 31, 1995 at 10. Accordingly, we hold that there is no "reason to doubt the quality, extensiveness, or fairness of procedures" followed in the state court proceedings. Montana, 440 U.S. at 164 n.11.

### III. Plaintiffs' Motion to Modify or Supplement the April 28, 1995 Order

The plaintiffs argue that the district court erred in declining to modify or supplement its April 28, 1995 order and rule on the plaintiffs' additional constitutional challenges to the Kansas Funeral Picketing Act after the legislature amended the statute. In its April 28, 1995 order, the district court granted the plaintiffs summary judgment, finding that the Kansas Funeral Picketing Act was facially unconstitutional because the terms "before" and "after a funeral," as used in the statute, were unduly vague. Following the order, on April 29, 1995, the Kansas legislature amended the statute to read "one hour before" and "two hours after" a funeral. The plaintiffs thereafter filed a motion to modify or supplement the April 28 order, asking the district court to address their additional constitutional challenges to the Kansas Funeral Picketing Act which they had presented in

28

their original summary judgment motion. On July 28, 1995, the district court denied the plaintiffs' motion, finding that

> [i]n reviewing the plaintiffs' arguments and authorities, the Court finds the plaintiffs are not entitled to relief under any of the many federal procedural rules they have cited. No miscarriage of justice or error of law has occurred that warrants a rehearing of the issues in this lawsuit and in the absence of any demonstrable mistake, the Court finds no ground to reconsider its Orders . . . .

Aplts' Br. att. F at 3 (Dist. Ct. Order dated July 28, 1995).

The plaintiffs do not specify on appeal the particular rule of evidence that they believe requires the district court to modify or supplement its April 28, 1995 order. In their original motion to modify or supplement the district court's order, however, the plaintiffs cited Federal Rules of Evidence 50, 52(b), 56, 57, 59, 60 and 62, and "any other applicable rule of law," as the basis for their motion. Aplts' App. vol. VII, at 2166 (Mot. for modification/suppl., dated May 2, 1995). This court has previously held that "regardless of how it is styled or construed . . . , a motion filed within ten days of the entry of judgment that questions the correctness of the judgment is properly treated as a Rule 59(e) motion." Vreeken v. Davis, 718 F.2d 343, 345 (10th Cir. 1983); see Miller v. Leavenworth-Jefferson Elec. Coop, Inc., 653 F.2d 1378, 1380 (10th Cir. 1981). Furthermore, we have held that a motion will be considered under Rule 59(e), "when it involves 'reconsideration of matters properly encompassed in a decision on the merits.'" Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir. 1989) (quoting Osterneck v. Ernst & Whinney, 489 U.S. 169, 174 (1989)). Because the plaintiffs' motion was filed within ten

29

days of the district court's judgment, and the motion seeks to alter the substantive ruling of the district court, we construe the plaintiffs' motion as a motion to alter or amend the judgment pursuant to Rule 59(e).

We review a district court's ruling on a Fed. R. Civ. P. 59(e) motion under an abuse of discretion standard. See Brown v. Presbyterian Healthcare Serv., 101 F.3d 1324, 1331 (10th Cir. 1996), cert. denied, 117 S. Ct. 1461 (1997). Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. Id. A Rule 59(e) motion to alter or amend the judgment should be granted only "'to correct manifest errors of law or to present newly discovered evidence.'" Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1523 (10th Cir. 1992) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).

The district court in this case denied the plaintiffs' motion, concluding that there was no miscarriage of justice or error of law warranting reconsideration of its April 28, 1995 order which held the Kansas Funeral Picketing Act to be facially unconstitutional. Based upon our review of the arguments advanced by the plaintiffs and the district court's July 28, 1995 order, we similarly conclude that the plaintiffs have not demonstrated any manifest error of law in the order or newly discovered evidence which indicates that that

order should have been reopened by the district court. Thus, we hold that the district court did not abuse its discretion in denying the plaintiffs' motion.

## IV. The Agreed Stay Order

The plaintiffs next argue that the district court erred in lifting its January 4, 1994 order staying the state criminal prosecutions. Both parties appear to agree that the stay and consolidation order was agreed to by the parties as an alternative to proceeding to an evidentiary hearing on the plaintiffs' motion for a preliminary injunction. Thus, in effect, the stay order operated as a preliminary injunction of the underlying state prosecutions pending the outcome of the district court's resolution of the plaintiffs' challenge to those prosecutions. On April 28, 1995, following the district court's order giving full faith and credit to the underlying state findings, the district court determined that the stay would remain in effect until the resolution of the plaintiffs' post-judgment motions. Then, on July 27, 1995, after determining that there were "no unresolved pre- or post-judgment disputes regarding the merits of this lawsuit," the district court vacated the January 4, 1994 stay order and allowed the state criminal cases to proceed. Aplts' Br. att. G, at 1 (Dist. Ct. Order dated July 27, 1995).

We review the district court's lifting of the stay in this case as the denial of a preliminary injunction under an abuse of discretion standard. See Walmer v. United

31

States Department of Defense, 52 F.3d 851, 854 (10th Cir. 1995). "Our review requires that we examine whether the district court committed an error of law or relied on clearly erroneous fact findings." Id. In order to obtain preliminary injunctive relief, the moving party must establish: (1) the movant will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood that the movant will succeed on the merits. Id. Furthermore, under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary to aid in its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Supreme Court has made clear that the statute imposes an absolute ban on federal injunctions against pending state court proceeding, in the absence of one of the recognized exceptions in the law. See Mitchum v. Foster, 407 U.S. 225, 228-29 (1972).

There is no basis for the plaintiffs' contention that the district court erred in lifting the agreed stay order. The plaintiffs do not discuss the Anti-Injunction Act or its exceptions, and our review of the record and applicable case law reveals no basis for applying one of the statutory exceptions. For this reason alone, we would uphold the district court's dissolution of the stay order. In addition, however, we conclude that under the traditional preliminary injunction factors--which the plaintiffs also fail to discuss--the

plaintiffs failed to demonstrate to the district court a "substantial likelihood" that they would succeed on the merits of this appeal. The district court determined that the plaintiffs' federal claims were barred by the Full Faith and Credit Act and issued its final order and judgment in the case. Therefore, we conclude that the stay, which operated as a preliminary injunction, no longer served any purpose and the district court did not commit an error of law or abuse its discretion in dissolving that order.

### V. Plaintiffs' Standing to Challenge the Anti-Stalking and Harassment Statutes

The plaintiffs' final argument is that the district court erred in granting Ms. Hamilton summary judgment in ruling that the plaintiffs lacked standing to challenge the Kansas Anti-Stalking Statute, Kan. Stat. Ann. § 21-3438; and telefacsimile amendment to the Kansas Telephone Harassment Statute, Kan. Stat. Ann. § 21-4113. In the underlying § 1983 action, the plaintiffs challenged the constitutionality of these two statutes, in addition to the Kansas Funeral Picketing Act, although none of them were ever charged under either statute. The plaintiffs claimed that they have standing to challenge the statutes because they are threatened with prosecution under both statutes. In their second amended complaint, they complained that the threat of prosecution is illustrated by:

> (a) [Ms. Hamilton's] public statements of intent to prosecute for what she perceives as 'harassment' in connection with faxes and pickets; (b) [Ms. Hamilton's] long standing and oft announced hostility toward plaintiffs and the anti-homosexual pickets; (c) the fact that [Ms. Hamilton] has filed ten criminal actions against plaintiffs in the past four months, all directly

33

related to and arising out of faxes and pickets; (d) the history and context of the passage of these laws; and (e) [Ms. Hamilton's] recent refusal to communicate her interpretation of the funeral picketing law despite a good faith request by plaintiffs that she do so.

Aplts' App. vol. II, at 705-06 (Plaintiffs' Second Amended Complaint, dated Nov. 15, 1993).

On December 23, 1993, in response to Ms. Hamilton's motion for summary judgment, the district court ruled that the plaintiffs lacked standing to challenge the Kansas Telephone Harassment Statute and Kansas Anti-Stalking Statute because they failed to establish facts demonstrating a genuine threat of prosecution under the statutes or that the statutes were enacted or amended in response to the plaintiffs' activities. Phelps v. Hamilton, 840 F. Supp. at 1461. Our review, as stated earlier, is de novo. See supra, at 13-14.

### A. Mootness of the Kansas Anti-Stalking Statute Claim

The first issue we must address is whether the plaintiffs' constitutional challenge to the Kansas Anti-Stalking Statute is moot because of a Kansas Supreme Court ruling in an unrelated case that the statute is unconstitutional. Subsequent to the district court's ruling in the underlying case, the Kansas Supreme Court in State v. Bryan, 910 P.2d 212 (Kan. 1996), held that the Kansas Anti-Stalking Statute was unconstitutionally vague. Id. at 220-21. Specifically, the court found that the terms "alarms," "annoys," and "harasses," as used in the statute without any definition or objective standard to measure

34

the prohibited conduct were unconstitutionally vague. Id. Because the court held the statute unconstitutional, Ms. Hamilton argues in her supplemental memorandum that the issue of the plaintiffs' standing to challenge the Kansas Anti-Stalking Statute is now moot.

The constitutional mootness doctrine is grounded in Article III's requirement that federal courts only decide "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Osborn v. Durant Bank & Trust Co., 24 F.3d 1199, 1203 (10th Cir. 1994) (citation omitted). The central question in determining whether a case has become moot is whether "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).

In applying the constitutional mootness test, we hold that the plaintiffs' claims related to the Kansas Anti-Stalking Statute are now moot due to the Kansas Supreme Court's ruling in Bryan. The plaintiffs no longer have a live or redressable claim as related to the Kansas Anti-Stalking Statute because the statute has been held unconstitutional. Therefore, the plaintiffs no longer face any threat of prosecution under the statute as alleged in their Second Amended Complaint. Accordingly, we dismiss the

plaintiffs' appeal of the district court's denial of their standing to challenge the Kansas Anti-Stalking Statute.

## B. Standing to Challenge the Kansas Telephone Harassment Statute

As stated earlier, Article III of the Constitution requires a plaintiff to present an actual "case or controversy," which, among other things, requires a plaintiff to show that they have standing. See Allen v. Wright, 468 U.S. at 750. To meet this requirement at an "irreducible constitutional minimum," a plaintiff must demonstrate that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see also, United States v. Colorado Supreme Court, 87 F.3d 1161 (10th Cir. 1996). These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, at 561. At the summary judgment stage, a plaintiff's standing must be supported by specific evidentiary facts and not by mere allegations. Id. at 562. Furthermore, "[i]t is a long-settled principle that standing alone cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" FW/PBS, Inc., v. City of Dallas, 493 U.S. 215, 231 (1990) (citations omitted).

We are also mindful that, because of the significance of First Amendment rights, the Supreme Court "has enunciated other concerns that justify a lessening of prudential limitations on standing." Secretary of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956 (1984); ACORN v. City of Tulsa, Oklahoma, 835 F.2d 735, 738 (10th Cir. 1987). Because the mere threat of prosecution under the allegedly unlawful statute may have a "chilling" effect on an individual's protected activity, "the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." Munson, 467 U.S. at 956. Regardless of this concern, however, a plaintiff bringing a facial challenge to a statute on First Amendment grounds must still satisfy the "injury-in-fact" requirement in order to demonstrate standing. Id. at 958. "Allegations of a subjective 'chill,' however, are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14 (1972). A plaintiff generally has standing only if he or she "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979); accord, ACORN, 835 F.2d at 739.

In this case, the district court first determined that because none of the statutes had been applied against the plaintiffs, they were without standing to challenge the statutes as applied. 840 F. Supp. at 1461. Therefore, in analyzing their claims as facial challenges,

37

the court then held that while plaintiffs had offered evidence to demonstrate that the Kansas Funeral Picketing Act was directed towards them and that their conduct was chilled because of uncertainties concerning language in that act, they had no similar basis for demonstrating standing to challenge the Kansas Telephone Harassment Statute. Specifically, the court found that:

> The plaintiffs have not come forth with proper Rule 56 evidence demonstrating that these statutes were amended or passed in response to the plaintiffs' activities; that these statutes target the plaintiffs; . . . that their First Amendment rights have been chilled by threats of prosecution under these statutes; and that [Ms. Hamilton] intends or plans to prosecute the plaintiffs under these statutes for conduct arguably protected under the Constitution.

Id. at 1462.

We agree with the district court that the plaintiffs have failed to put forth any objective evidence that they intend to engage in activities prohibited by the telefacsimile amendment to the Kansas Telephone Harassment Statute or that they face an imminent threat of prosecution under the amendment. First, the plaintiffs have not alleged any intention to violate the amendment through the transmission of telefacsimiles arguably covered under the amendment. This failure to allege an intention and to support such intention with objective evidence leaves it entirely speculative whether the plaintiffs will face any actual or imminent injury from future prosecution. See ACORN, 835 F.2d at 737-38, 739 (finding standing where plaintiffs offered evidence of the dates and plans for events in which the challenged ordinance would be violated). As the Supreme Court has

38

observed, even "'some day' intentions--without any description of concrete plans, or indeed even any specification of when the some day will be--do not support a finding of the 'actual or imminent' injury that our cases require." Lujan, 504 U.S. at 564.

Second, the plaintiffs offer no evidence to support their allegation that they are threatened with prosecution under the amendment. Unlike ACORN, where the city had made clear its intentions to enforce the city ordinance requiring permits for demonstrations, there is no evidence that Ms. Hamilton has made any threat to prosecute the plaintiffs for violation of the telefacsimile amendment. The plaintiffs' allegation that Ms. Hamilton has threatened to prosecute them generally is not enough to confer standing. See Poe v. Ullman, 367 U.S. 497, 501 (1961) (plurality opinion) (holding that mere allegation that state attorney intended to prosecute any offense committed under state law was insufficient to confer standing). Furthermore, although the plaintiffs allege that Ms. Hamilton's intent to prosecute can be demonstrated by past prosecutions, none of those prosecutions arose under the challenged amendment or, for that matter, any of the state laws challenged by the plaintiffs. Because the plaintiffs have failed to put forth any objective evidence in the face of Ms. Hamilton's summary judgment motion to support their standing to bring this action, we hold that the district court properly declined to exercise jurisdiction over this claim.

**CONCLUSION**

39

In summarizing our holding in this case, we reach the following conclusions: (1) we dismiss Karl Hockenbarger's and Timothy Phelps' appeal of the district court's ruling on their bad faith prosecution claims for lack of standing; (2) we reverse the district court's judgment dismissing the plaintiffs' bad faith prosecution claim on full faith and credit grounds and remand this issue to the district court for further proceedings on the particular question of whether the bad faith issue in the post-July 14, 1993 state prosecutions was "actually determined and necessary to support the judgment" in those cases; (3) we affirm the district court's denial of the plaintiffs' motion to modify or supplement its April 28, 1995 order; (4) we affirm the district court's lifting of the stay order; (5) we dismiss the Kansas Anti-Stalking Statute claim on mootness grounds; and (6) we affirm the district court's ruling that the plaintiffs lacked standing to challenge the telefacsimile amendment to the Kansas Telephone Harassment Statute. Accordingly, we AFFIRM in part, and REVERSE and REMAND in part.