**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 11 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VAUGHN L. MURPHY,

      Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE,

      Defendant-Appellee,

-----------------------------------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Amicus Curiae.

Case No. 96-3380
(D.C. No. 95-CV-4126-SAC)
(District of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **ANDERSON**, and **HENRY**, Circuit Judges.

---

    [*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This is an employment discrimination case arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"). Plaintiff-Appellant Vaughn Murphy appeals the district court's grant of summary judgment in favor of Defendant-Appellee, United Parcel Service, Inc. ("UPS"). The district court granted summary judgment based in part upon its finding that no rational factfinder would be able to conclude that Mr. Murphy is an individual with a disability within the meaning of the ADA. Because we agree that Mr. Murphy is not an individual with a disability within the meaning of the ADA, we affirm.

We review a grant of summary judgment de novo, applying the same standard that guided the district court. Phelps v. Hamilton, 122 F.3d 1309, 1317 (10th Cir. 1997). Summary judgment is appropriate when there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. Fed. R. Civ. P. 56(c). On summary judgment, we view the evidence in the light most favorable to the nonmovant, and we draw all reasonable inferences in his or her favor. Phelps, 122 F.3d at 1318.

## I.  STATEMENT OF FACTS

Mr. Murphy has had high blood pressure for most of his life. Without medication, his blood pressure is approximately 250/160. He takes medication to control his condition.

In August 1994, Mr. Murphy applied to UPS for a position as a mechanic. Mechanics at UPS must hold commercial drivers licenses because they are required to drive large trucks in order to perform "road tests" and "road calls." In order to qualify for a mechanic position, an applicant must obtain a Department of Transportation ("DOT") health card. Therefore, as part of the application process, Mr. Murphy submitted to a physical examination. At the time of the exam, his blood pressure was 186/124. A health card was issued to Mr. Murphy, and he accepted an offer of employment. He began working at UPS in mid-August.

In mid-September 1994, a UPS company nurse was reviewing Mr. Murphy's file, and she determined that Mr. Murphy's blood pressure did not meet DOT requirements for commercial truck drivers.[1] UPS concluded that Mr. Murphy's health card had been issued in error. UPS terminated Mr. Murphy's employment on October 5, 1994 because his blood pressure exceeded DOT safety standards for driving a commercial motor vehicle.

---

[1]The DOT standard for commercial drivers is blood pressure at or below 160/90. Aplt's App. at 139 (Dep. of Dr. Robert R. Brown).

3

## II. DISCUSSION

The ADA defines the term "disability," with respect to an individual, as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1996). An impairment is substantially limiting when it renders a person unable to perform major life activities that the average person can perform, or when it significantly restricts the condition, manner, or duration under which he or she can perform the major life activity as compared to an average person. Id. at § 1630.2(j)(1)(i) & (ii).

The district court ruled that when determining whether Mr. Murphy's high blood pressure substantially limits a major life activity, the condition should be considered in its medicated state. Murphy v. United Parcel Service, Inc., 946 F. Supp. 872, 881 (D. Kan. 1996). The district court determined that Mr. Murphy's hypertension, when medicated, did not substantially limit him in any major life activity. Id. at 881-82. Mr. Murphy argues that the district court should have considered his high blood pressure in its unmedicated state when determining whether he is an individual with a disability. He argues that his high blood

4

pressure, without medication, substantially limits various major life activities, including working.

After the instant case was orally argued, this Court, in a separate and unrelated case, decided the issue of whether an impairment should be considered in its medicated/corrected state or its unmedicated/uncorrected state for purposes of determining whether the impairment substantially limits a major life activity. In Sutton v. United Air Lines, Inc., 130 F.3d 893, 902 (10th Cir. 1997), we held that the "determination of whether an individual's impairment substantially limits a major life activity should take into consideration mitigating or corrective measures utilized by the individual."  Therefore, we must decide whether Mr. Murphy's high blood pressure, with medication, substantially limits a major life activity.  Mr. Murphy's own doctor testified that when his high blood pressure is medicated, he "functions normally doing everyday activity that an everyday person does."  Aplt's App. at 152 (Dep. of Dr. Debra Doubek).  Thus, we conclude that Mr. Murphy's high blood pressure does not substantially limit a major life activity.

Even if an impairment does not substantially limit a major life activity, a plaintiff is still covered by the ADA's protections if an employer regarded him or her as having an impairment that substantially limits a major life activity.  See 42

U.S.C. § 12102(2)(C). The regulations promulgated pursuant to the ADA state

three ways that an individual might be "regarded as" having such an impairment:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has none of the [previously defined] impairments . . . but is treated by a covered entity as having a substantially limiting impairment."

29 C.F.R. § 1630.2(*l*) (1997).

Mr. Murphy argues that he is entitled to ADA protection because UPS

regarded him as having an impairment that substantially limits a major life

activity. He argues that UPS terminated him based on the discriminatory and

stereotypical view that it is too risky to employ individuals who have high blood

pressure because they are likely to have heart attacks or strokes. However, UPS

did not base its termination of Mr. Murphy on an unsubstantiated fear that he

would suffer a heart attack or stroke. Rather, UPS terminated Mr. Murphy

because his blood pressure exceeded the DOT's requirements for drivers of

commercial vehicles. Thus, we conclude that UPS, in its termination decision,

did not regard Mr. Murphy as having an impairment that substantially limits a

major life activity.

Mr. Murphy also argues that, as a reasonable accommodation, UPS should

have offered him a temporary certification and given him time to get his blood

pressure down. However, because we have concluded that Mr. Murphy is not an individual with a disability, we need not reach the question of whether he is a qualified individual with a disability, i.e. whether, with or without reasonable accommodation, he could perform the essential functions of the job. See 42 U.S.C. § 12111(8) (defining "qualified individual with a disability"). Likewise, we need not address his remaining contention, namely, that DOT regulations do not provide a defense to his ADA claim.

Finally, Mr. Murphy argues that UPS made illegal inquiries during his job interview. He does not link this allegation to his ADA claim, nor does he provide the court with any other legal basis for consideration of this claim. The district court did not rule on this issue. We find that, in any event, this allegation does not raise a genuine issue of material fact on Mr. Murphy's ADA claim.

For the reasons set forth above, we conclude that the district court properly granted summary judgment in favor of UPS. Accordingly, we AFFIRM the judgment of the district court.

Entered for the Court,


Robert H. Henry
Circuit Judge